**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

PABLO RUIZ-APOLONIO,
  *Defendant-Appellant.*

No. 10-50306

D.C. No.
3:10-cr-00109-
DMS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
March 11, 2011—Pasadena, California

Filed September 14, 2011

Before: Betty B. Fletcher and Kim McLane Wardlaw,
Circuit Judges, and Brett M. Kavanaugh, Circuit Judge.*

Opinion by Judge Wardlaw

---

*The Honorable Brett M. Kavanaugh, Circuit Judge for the District of
Columbia Circuit, sitting by designation.

17467

## COUNSEL

James Fife, Assistant Federal Public Defender, Federal Defenders of San Diego, Inc., for defendant-appellant Pablo Ruiz-Apolonio.

Laura E. Duffy, United States Attorney, and Bruce R. Castetter and Daniel Earl Zipp, Assistant United States Attorneys, San Diego, California, for plaintiff-appellee United States of America.

## OPINION

WARDLAW, Circuit Judge:

Pablo Ruiz-Apolonio appeals the 46-month sentence of imprisonment imposed following his guilty plea to one count of illegal reentry under 8 U.S.C. § 1326. Because we agree with the district court that a conviction for forcible rape under California Penal Code § 261(a)(2) is categorically a "crime of violence" as defined by the Sentencing Guidelines, we hold that the district court correctly imposed a 16-level sentencing enhancement. We also hold that the district court did not commit procedural error in calculating the Guidelines range and that the sentence of 46 months was not substantively unreasonable. We therefore affirm.

**I.**

In 2007, Ruiz pleaded guilty under California Penal Code § 261(a)(2) to one count of forcible rape, a crime he committed in 2002. He was deported to Mexico on September 9, 2009, but reentered the United States without permission on November 13, 2009. On February 9, 2010, Ruiz pleaded guilty to one count of illegal reentry after deportation in violation of 8 U.S.C. § 1326. At sentencing, the district court found that Ruiz's prior California conviction under § 261(a)(2) constituted a "crime of violence" within the meaning of the Sentencing Guidelines and therefore warranted a 16-level upward adjustment of the offense level, resulting in a total offense level of 21. The court then found that Ruiz's criminal history score was 6, which placed him into Criminal History Category III, resulting in a Guidelines sentencing range of 46-57 months of imprisonment.

In addition to his argument that rape under California Penal Code § 261(a)(2) is not categorically a crime of violence under U.S.S.G. § 2L1.2, Ruiz raised two specific objections to the Guidelines calculation. First, while he conceded that he

had committed his illegal reentry offense within two years of release from prison, he nonetheless argued that the district court's addition of two "recency" points under U.S.S.G. § 4A1.1(e) was improper. He based this argument on the Sentencing Commission's January 21, 2010 proposal to amend the Guidelines to eliminate the calculation of recency points from U.S.S.G. § 4A1.1(e), and the Commission's statement that inclusion of such recency points "only minimally improves" the predictability of recidivism. Although the proposal had not yet gone into effect on the date of sentencing, Ruiz believed that the district court should apply it. Second, Ruiz argued that, because the Bureau of Prisons allegedly calculates "good time" credits differently than does the Sentencing Commission, the Guidelines sentencing range was effectively increased to compensate for time off that Ruiz could not possibly earn.

The district court rejected both arguments without explanation and then considered the 18 U.S.C. § 3553(a) factors. Discussing what it termed "a number of aggravating facts," the court noted that the circumstances of the 2002 rape were very serious, demonstrating that Ruiz was a danger to society. The court added that it had carefully considered the mitigating factors laid out in a letter from Ruiz's sister, as well as the Probation Office's recommendation of 57 months of imprisonment. The court concluded that a sentence at the low end of the Guidelines range was appropriate and sentenced Ruiz to 46 months of imprisonment, with two years supervised release, no fine, and a $100 special assessment.

## II.

"Whether a conviction constitutes a crime of violence under the Guidelines is reviewed de novo." *United States v. Jennen*, 596 F.3d 594, 600 (9th Cir. 2010).

We review the sentence imposed by the district court for abuse of discretion. *United States v. Carty*, 520 F.3d 984, 993

(9th Cir. 2008) (en banc); *see also Gall v. United States*, 552 U.S. 38, 46 (2007). We will reverse the sentence only where it was procedurally erroneous or substantively unreasonable. *Carty*, 520 F.3d at 993. "It would be procedural error for a district court to fail to calculate — or to calculate incorrectly — the Guidelines range . . . or to fail adequately to explain the sentence selected, including any deviation from the Guidelines range." *Id.* (citing *Gall*, 552 U.S. at 51). The explanation must be sufficient "to permit meaningful appellate review." *Id.* at 992 (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)). While the district court "need not . . . articulate in a vacuum how each § 3553(a) factor influences its determination of an appropriate sentence," when "a party raises a specific, nonfrivolous argument tethered to a relevant § 3553(a) factor in support of a requested sentence, then the judge should normally explain why he accepts or rejects the party's position." *Id.* at 992-93. That said, lengthy explanations of sentencing decisions are not necessary "if 'the record makes clear that the sentencing judge considered the evidence and arguments.' " *United States v. Daniels*, 541 F.3d 915, 922 (9th Cir. 2008) (quoting *Rita*, 551 U.S. at 359).

In addressing whether Ruiz's sentence was substantively unreasonable, we must consider "the totality of the circumstances." *Carty*, 520 F.3d at 993. "A substantively reasonable sentence is one that is 'sufficient, but not greater than necessary' to accomplish § 3553(a)(2)'s sentencing goals." *United States v. Crowe*, 563 F.3d 969, 977 n.16 (9th Cir. 2009) (quoting 18 U.S.C. § 3553(a)). "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc)); *see also United States v. Ellis*, 641 F.3d 411, 423 (9th Cir. 2011).

## III.

The district court did not err by increasing Ruiz's offense level by 16 levels on the basis of Ruiz's 2007 conviction for

rape in California, because a conviction under California Penal Code § 261(a)(2) is categorically a crime of violence under U.S.S.G. § 2L1.2.

**[1]** California Penal Code § 261(a)(2) defines rape as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . [w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." The illegal reentry sentencing guidelines provide that a defendant's offense level shall be increased by 16 levels "[i]f the defendant previously was deported, or unlawfully remained in the United States, after" a "conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). To determine whether California Penal Code § 261(a)(2) is categorically a "crime of violence," we apply the "categorical approach" set forth in *Taylor v. United States*, 495 U.S. 575, 602 (1990). Under the categorical approach, we look " 'not to the particular facts underlying [the defendant's prior] conviction [ ],' but 'only to the fact of conviction and the statutory definition of the prior offense,' in order to determine whether the state statute could potentially criminalize conduct that would not qualify as" a crime of violence. *United States v. Aguila-Montes de Oca*, No. 05-50170, slip op. at 10586 (9th Cir. Aug. 11, 2011) (en banc) (alterations in original) (quoting *Taylor*, 495 U.S. at 600, 602). The sentencing enhancement is applicable under the categorical approach only if "the full range of conduct covered by the state statute . . . fall[s] within the scope of the federal statutory provision." *United States v. Pallares-Galan*, 359 F.3d 1088, 1099-1100 (9th Cir. 2004) (citation omitted).

**[2]** Application Note 1(B)(iii) to U.S.S.G. § 2L1.2 defines "crime of violence" to include "forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced)." U.S. Sentencing Guidelines Manual § 2L1.2 cmt. n.1(B)(iii) (2010). Therefore, we must decide

whether California Penal Code § 261(a)(2) is a "forcible sex offense." Before the 2008 Sentencing Guidelines became effective, Application Note 1(B)(iii) to U.S.S.G. § 2L1.2 had defined "crime of violence" to include only three types of sexual offenses: "forcible sex offenses, statutory rape, [and] sexual abuse of a minor." *See, e.g.*, U.S. Sentencing Guidelines Manual § 2L1.2 cmt. n.1(B)(iii) (2007). Both we and the Fifth Circuit construed the term "forcible sex offense" as requiring the use of some physical force above and beyond that required for penetration. *See, e.g.*, *United States v. Beltran-Munguia*, 489 F.3d 1042, 1051 (9th Cir. 2007); *United States v. Luciano-Rodriguez*, 442 F.3d 320, 323 (5th Cir. 2006); *United States v. Sarmiento-Funes*, 374 F.3d 336, 341 (5th Cir. 2004). In 2007, citing *Sarmiento-Funes*, the Fifth Circuit held that a conviction for rape under California Penal Code § 261(a)(2) was not categorically a crime of violence under the Guidelines because the statute criminalized sexual intercourse (including intercourse accomplished through fear or duress) accomplished without the use of physical force. *United States v. Gomez-Gomez*, 493 F.3d 562, 567 (5th Cir. 2007) [hereinafter *Gomez-Gomez I*]. The Fifth Circuit later reheard this decision en banc and unanimously changed direction, holding that a conviction under California Penal Code § 261(a)(2) *did* categorically constitute a crime of violence. *United States v. Gomez-Gomez*, 547 F.3d 242, 246, 248 (5th Cir. 2008) (en banc) [hereinafter *Gomez-Gomez II*]. In 2008, in direct response to the earlier decisions in *Luciano-Rodriguez*, *Sarmiento-Funes*, and *Gomez-Gomez I*, the Sentencing Commission promulgated Amendment 722, which modified the definition of Application Note 1(B)(iii) to include within the definition of "forcible sex offenses" those sex offenses "where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced." U.S. Sentencing Guidelines Manual Supp. to App. C (2008), at 296.

Focusing on the 2008 version of Application Note 1(B)(iii), Ruiz argues that § 261(a)(2) criminalizes conduct that does

not fall within the Guidelines definition of "crimes of violence," because it is theoretically possible to convict a perpetrator who passively exploits a victim's unreasonable, subjective fear of immediate and unlawful bodily injury even though he has not committed a "forcible sex offense." Specifically, Ruiz imagines the possibility of a victim who silently assents to intercourse under circumstances where the victim unreasonably believes that failure to assent will result in harm, even though the perpetrator has taken no intentional actions to create this fear. Such a hypothetical victim, Ruiz argues, has given consent that is neither involuntary nor actively coerced.

Ruiz's argument fails in several ways. First, the premise that his hypothetical perpetrator would not have committed a "forcible sex offense" depends upon an overly restrictive textual parsing of the Application Note. Ruiz suggests that "involuntary" consent can mean only consent obtained by fraud or intoxication, because otherwise the terms "involuntary" and "coerced" would be redundant.[1] Ruiz also suggests that in

---

[1] Ruiz argues that § 2L1.2 describes three means of vitiating consent: (1) coercion, or "duress without actual force"; (2) incompetence (by reason of age or mental condition); and (3) involuntariness, which he takes to mean "by fraud or drugging." There is no question in this appeal about incompetent consent. As support for his restrictive reading of involuntariness, Ruiz argues that these three scenarios are the only ones presented in the three Fifth Circuit cases the Sentencing Commission cited in explaining the need for Amendment 722. *See* U.S. Sentencing Guidelines Manual Supp. to App. C (2008), at 296; *Luciano-Rodriguez*, 442 F.3d at 323; *Sarmiento-Funes*, 374 F.3d at 341; *Gomez-Gomez I*, 493 F.3d at 567. Those cases, however, were referenced because they were all examples — clearly not exhaustive — of courts excluding forcible sex crimes from the definition of crimes of violence where the victims may have assented, though there was no legally valid consent. *See* U.S. Sentencing Guidelines Manual Supp. to App. C (2008), at 296. The Commission's reasoning simply demonstrates that it wanted a black-letter rule that forcible sex offenses are crimes of violence, "regardless of whether the prior offense expressly has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* (quotation omitted).

order to "coerce" consent, a perpetrator must intentionally act, and so there cannot be coercion where a perpetrator is entirely passive. *See, e.g.*, Black's Law Dictionary 294 (9th ed. 2009) (defining coercion as "[c]ompulsion by physical force or threat of physical force"). There is no reason, however, to read either "involuntary" consent or "coerced" consent in such a limited fashion. That the Commission cited three particular decisions in explaining its reasons for amending the Application Note does not mean that the Commission thought those decisions exhaustively articulated all the circumstances captured by the amended definition of "forcible sex offenses." The sort of "consent" that Ruiz envisions, where a victim assents only because he or she subjectively and unreasonably fears immediate and unlawful bodily harm, is clearly "involuntary." Even were Ruiz correct that his hypothetical victim's assent would not constitute "involuntary" or "coerced" consent, moreover, the plain language of the Application Note makes it clear that the Guidelines definition of "forcible sex offenses" captures other sorts of invalid "consent" as well. *See* U.S. Sentencing Guidelines Manual § 2L1.2 cmt. n.1(B)(iii) (2010) ("*[I]ncluding* where consent to the conduct is not given or is not legally valid, *such as* where consent to the conduct is involuntary, incompetent, or coerced." (emphasis added)); *see also* U.S. Sentencing Guidelines Manual § 1B1.1 cmt. n.2 (2010) ("The term 'includes' is not exhaustive.").

**[3]** Second, the plain language of California Penal Code § 261(a)(2) makes clear that it does not criminalize sexual intercourse where a victim actually consents. The statute criminalizes only "sexual intercourse . . . accomplished against a person's will." Cal. Penal Code § 261(a)(2). Under California law "against a person's will" in the context of sexual assault "means 'without the consent of the alleged victim.' " *People v. Lee*, 248 P.3d 651, 664 n.10 (Cal. 2011); *Gomez-Gomez II*, 547 F.3d at 248 ("Such offenses [under § 261(a)(2)], by definition, involve victims who have not consented in fact, even if the victim has nominally consented.").

Indeed, the jury instructions for rape cases under § 261(a)(2) promulgated by the Committee on California Criminal Jury Instructions defines "[a]gainst that person's will" as "without the consent of the alleged victim." CALJIC 10.00. The Judicial Council of California Criminal Jury Instructions are even more direct: "To prove that the Defendant is guilty of [rape under § 261(a)(2)], the People must prove that . . . [t]he woman did not consent to the intercourse . . . ." CALCRIM 1000 (2011).[2]

Third, in any event, it is not clear that Ruiz's hypothetical passive and unreasonable victim actually "consents," even under California's definition of "consent." California Penal Code § 261.6 defines "consent" as "positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved." Ruiz argues that, where a victim assents or acquiesces to intercourse only because of force, duress, or fear of harm, but positively cooperates "in act or attitude," the victim has actually "consented." Ruiz, however, ignores the second half of the definition. Even if he is correct that a victim who assents to intercourse out of an unreasonable fear of immediate and unlawful injury "consents" by somehow "positive[ly] cooperat[ing] . . . pursuant to an exercise of free will," such a victim surely is not acting "freely and voluntarily." *See, e.g.*, *Gomez-Gomez II*, 547 F.3d at 248 ("A mere word or action indicating consent that is given under duress, whether through physical or nonphysical means, and against the free will of the victim, indicates nothing about whether the victim in fact wishes to engage in sex . . . ."). *But see Lee*, 248 P.3d at 669 (California Supreme Court declined to reach the questions of "whether an instruction that consent may be proved by evidence of an alleged

---

**[2]**California courts use both sets of instructions, though courts are "strongly encouraged" to use the Judicial Council instructions. *See* Cal. Rules of Court, Rule 2.1050(e).

rape victim's passive acquiescence would be consistent with the intent of the Legislature as expressed in section 261.6").

While Ruiz's hypothetical argument is inventive, to show that a state statute criminalizes conduct that lies outside the generic definition of a listed crime in a federal statute, the defendant must demonstrate that there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). To do so, the defendant must point to at least one case in which the state courts applied the statute in the manner that he posits. *Id.*; *see also United States v. Laurico-Yeno*, 590 F.3d 818, 822 (9th Cir. 2010). Ruiz contends that there is a "realistic probability" that California courts would apply California's forcible rape statute to offenses beyond those included in the generic definition. He points to three decisions of the California courts where, he claims, the victim consented to the sexual intercourse, but the defendant was nevertheless convicted of rape under § 261(a)(2). These decisions, however, do not demonstrate that the California courts would uphold a § 261(a)(2) conviction where a victim consents to intercourse only because of a subjective, unreasonable fear of immediate and unlawful bodily harm, because in each of the three decisions Ruiz cites the victims did *not* consent to intercourse.

Ruiz first cites *People v. Young*, 235 Cal. Rptr. 361, 367-68 (Ct. App. 1987). Ruiz argues that *Young* demonstrates that "subjective fear in the absence of deliberate, coercive acts of the defendant" is sufficient to meet the requirement in § 261(a)(2) that the intercourse with a nonspouse be "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." In *Young*, a twenty-six-year-old father was convicted under what is now § 261(a)(2)[3] after

---

[3]At the time, California Penal Code § 261(a)(2) was codified as § 261(2).

his six-year-old daughter testified that he had oral and vaginal intercourse with her. *Id.* at 362-63. The victim testified that she did not want to engage in intercourse with her father, but was "too scared" to object, although the defendant "did not say anything to [the victim] that made her afraid." *Id.* The California Court of Appeal overturned the conviction, concluding that, while the evidence *was* sufficient to show that the sexual intercourse was accomplished against the victim's will by means of force, there was "no substantial evidence that defendant accomplished the act of sexual intercourse by means of fear of immediate and unlawful bodily injury," and it was "unable to state with any degree of certainty which theory the jury may have used to find" the defendant guilty. *Id.* at 367. While Ruiz cites *Young* for the court's holding that "[e]ven [a victim's] unreasonable fear" of immediate and unlawful bodily injury would be sufficient to sustain a § 261(a)(2) conviction, he ignores the court's holding that, given the evidence, "[t]he jury could . . . properly find that the act of sexual intercourse was against [the victim's] will since she did not want to do it and the evidence did not otherwise establish positive cooperation in act or attitude."[4] *Id.* Thus, *Young* does not stand for the proposition that a defendant can be convicted under § 261(a)(2) where a victim *consents*.

Ruiz next cites *In re John Z.*, 60 P.3d 183, 185 (Cal. 2003), which, he argues, demonstrates that a defendant can be convicted under § 261(a)(2) after engaging in consensual sex. In *John Z.*, a minor defendant was convicted of forcible rape after he and the seventeen-year-old victim began engaging in "apparently consensual intercourse," but "the victim expresse[d] an objection and attempt[ed] to stop the act and the defendant forcibly continue[d] despite the objection." *Id.*

---

[4]The *Young* court, moreover, overturned the defendant's rape conviction due to insufficiency of the evidence. Given the court's holding that the evidence was sufficient to show that the intercourse was against the victim's will, we need not consider whether a decision overturning a conviction can satisfy the *Duenas-Alvarez* requirement.

The California Supreme Court affirmed the conviction, holding — contrary to Ruiz's arguments — that the victim did *not* consent. Indeed, the California Supreme Court observed that, even if the victim "initially consented to, or appeared to consent to, intercourse with defendant, substantial evidence shows that she withdrew her consent and, through her actions and words, communicated that fact." *John Z.*, 60 P.3d at 186-87. "[N]o reasonable person in defendant's position would have believed that [the victim] continued to consent to the act," the Court added. *Id.* at 187.

Finally, Ruiz cites *People v. Iniguez*, 872 P.2d 1183, 1188 (Cal. 1994), which, he argues, demonstrates both: (1) that a defendant can be convicted under § 261(a)(2) where the defendant knowingly uses, but does not intentionally create, a victim's objectively unreasonable fear; and (2) that a defendant can be convicted under § 261(a)(2) where the victim consents. In *Iniguez*, the defendant, who was the fiancé of the victim's close friend and who had just met the victim that night, admitted that "he approached her as she slept on the living room floor, removed her pants, fondled her buttocks, and had sexual intercourse with her," all without saying anything. *Id.* at 1184-85. The victim, who was staying at her friend's house on the night before her wedding, testified that she was too scared to use physical force to resist a man whom she did not know, who outweighed her by 100 pounds, and who approached her silently while she was sleeping. *Id.* While the California Supreme Court affirmed the conviction, *Iniguez* does not demonstrate that a defendant can be convicted of rape under § 261(a)(2) where a victim consents; indeed, the court explicitly found that the evidence was sufficient to show "that the sexual intercourse was accomplished *against [the victim's] will* by means of fear of immediate and unlawful bodily injury." *Id.* at 1188 (emphasis added).

**[4]** Given Ruiz's inability to identify any case in which the state courts applied the statute where a victim had consented to intercourse — a reading that would run contrary to the

plain language of § 261(a)(2) — the district court did not err by applying the 16-level "crime of violence" offense level increase authorized by U.S.S.G. § 2L1.2(b)(1)(A)(ii).[5]

## IV.

The district court did not commit either procedural or substantive error by denying the variances Ruiz requested to compensate for the inclusion of "recency" points and the supposed differences between the Sentencing Commission's and Bureau of Prisons' methods for calculating good time credits, or by declining to explain why it rejected Ruiz's arguments for the variances.[6]

### A.    Substantive Unreasonableness

### 1.    Recency Points

The district court's rejection of the requested variance to account for the inclusion in the Guidelines calculation of recency points did not render Ruiz's sentence substantively unreasonable.[7]

---

[5]Because we conclude that a conviction under § 261(a)(2) is categorically a crime of violence, we need not address the application of the modified categorical approach.

[6]Ordinarily, "we first consider whether the district court committed significant procedural error," and only then consider the substantive reasonableness of a sentence. *Carty*, 520 F.3d at 993. Here, however, Ruiz's procedural arguments regarding the district court's response to his requests for a variance are best understood in light of the substantive reasonableness analysis regarding those requested variances. While in considering Ruiz's appeal we have followed the order described in *Carty*, for purposes of clarity, we address substantive unreasonableness first.

[7]To the extent Ruiz suggests that the court procedurally erred by calculating the recency points, he is wrong. It "would be procedural error for a district court to fail to calculate — or to calculate incorrectly — the Guidelines range." *Carty*, 520 F.3d at 993 (citing *Gall*, 552 U.S. at 50). Courts "shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a). In calculating the Guidelines range, the district court properly used the Guidelines Manual in effect at the time of sentencing.

**[5]** At the time of Ruiz's sentencing, to calculate the criminal history score, the district court was to "[a]dd 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence." U.S.S.G. § 4A1.1(e) (2009).[8] On January 21, 2010, however, the Sentencing Commission proposed Amendment 742, which eliminated the addition of points due to recency of a prior sentence. U.S. Sentencing Guidelines Manual § 4A1.1(e) (Proposed Amendment 2010). In an April 19, 2010 press release, the Commission stated that the addition of recency points might "result in a single criminal history event having excessive weight in the determination of the applicable guideline range." Press Release, U.S. Sent'g Comm'n, U.S. Sentencing Commission Votes to Send to Congress Guideline Amendments Providing More Alternatives to Incarceration, Increasing Consideration of Certain Specific Offender Characteristics During the Sentencing Process (Apr. 19, 2010). The Commission added that "deletion of the provision did not detract from the overall ability of the criminal history score . . . to predict an offender's likelihood of recidivism." *Id.* In an April 30, 2010 policy statement on the proposed amendment, the Commission further explained that consideration of recency "only minimally improves the predictive ability" of the criminal history score, and that it had received public comment and testimony suggesting that recency "does not necessarily reflect increased culpability." U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary 14-15 (2010). The amendment took effect November 1, 2010; recency points are no longer included in the calculation of criminal history points.

---

[8]Subsection (a) addresses a prior sentence of imprisonment that exceeds one year and one month; subsection (b) addresses prior sentences of imprisonment of at least sixty days not counted in subsection (a).

Ruiz argues that, in accord with the general parsimony principle of 18 U.S.C. § 3553(a), the district court should have varied downward because recency points were "empirically unjustified" when he was sentenced. Ruiz cites *Kimbrough v. United States*, 552 U.S. 85, 101 (2007), in which the Supreme Court, addressing the crack and powder cocaine equivalencies, held that courts may vary from the Guidelines ranges "based solely on policy considerations, including disagreements with the Guidelines," after considering the § 3553(a) factors, including the "overarching" parsimony provision. *Id.* (quotation omitted). The *Kimbrough* Court reasoned that the Commission's recommendations are generally based "on empirical data and national experience," but that in formulating the crack cocaine ranges, the Commission was not permitted to consider such data. *See id.* at 109-10. The implication is that the Guidelines ranges are given more weight when they are based on the Commission's analysis of empirical data and national experience, and they are due less weight when they regularly result in sentences that are " 'greater than necessary' in light of the purposes of sentencing set forth in § 3553(a)." *See id.*; *see also Spears v. United States*, 555 U.S. 261, 264-65 (2009).

**[6]** We have not previously addressed this recency points variance argument in a published opinion. The First Circuit has done so and has rejected it. *See United States v. Adams*, 640 F.3d 41, 43 (1st Cir. 2011). In unpublished opinions, moreover, we, along with at least five other circuits, have similarly rejected versions of the argument that a variance was required after the Commission promulgated the amendment but before the amendment became effective. *See, e.g.*, *United States v. Prado-Figueroa*, No. 10-10305, 2011 WL 2784098, at *1 (9th Cir. Jul. 18, 2011); *United States v. Rodriguez-Sanchez*, No. 10-10217, 2011 WL 1898202, at *1 (9th Cir. May 19, 2011); *United States v. Gonzalez-Molina*, 409 Fed. App'x 751, 752 (5th Cir. 2011) (per curiam); *In re Anderson*, 409 Fed. App'x 593, 594 (3d Cir. 2011) (per curiam); *United States v. Gadsden*, 412 Fed. App'x 523, 525

(3d Cir. 2011); *United States v. Dennis*, 412 Fed. App'x 452, 454-55 (3d Cir. 2011); *United States v. Mitchell*, 403 Fed. App'x 560, 562 (2d Cir. 2010). No circuit has found a sentence substantively unreasonable where, after promulgation of the proposed amendment that reduced the sentencing range, a court declined to vary downward to account for inclusion of recency points in the Guidelines calculation.

**[7]** A sentencing court, of course, has the discretion to grant a variance from the Guidelines after promulgation but before adoption of a proposed amendment, based on its policy disagreement with the existing Guidelines provision, especially where, as here, the Commission has acted to remedy the basis for the court's disagreement. *Kimbrough*, 552 U.S. at 101. However, where an amendment has been promulgated but has not yet been adopted, district courts are not *required* to consider that amendment in the § 3553 analysis unless the amendment has been given retroactive effect by express decision of the Commission. *See Braxton v. United States*, 500 U.S. 344, 348 (1991) ("In addition to the duty to review and revise the Guidelines, Congress has granted the Commission the unusual explicit power to decide whether and to what extent its amendments reducing sentences will be given retroactive effect.") (emphasis and citation omitted). "[S]ubstantive amendments to the guidelines that occur between the date of sentencing and the resolution of an appeal have no retroactive effect unless specifically referenced in U.S.S.G. § 1B1.10." *United States v. Diaz-Cardenas*, 351 F.3d 404, 409 (9th Cir. 2003) (citing *United States v. Aldana-Ortiz*, 6 F.3d 601, 603 (9th Cir. 1993)).[9] Amendment 742 is

---

[9]The Commission can also vote to make retroactive a Guidelines amendment initially proposed as prospective. On June 30, 2011, for example, the Commission unanimously voted to give limited retroactive effect to the Guidelines amendment reducing sentences of imprisonment for offenses involving crack cocaine proposed to implement the Fair Sentencing Act of 2010, Pub. L. 111-220, even though the Guidelines amendment, as initially promulgated, was prospective only. Both the amendment and the retroactivity provision become effective on November 1, 2011, absent congressional action to the contrary.

not listed in U.S.S.G. § 1B1.10 (2010); indeed, the Commission explicitly chose not to make it retroactive. *See* U.S. Sentn'g Comm'n Public Meeting Minutes (Sept. 16, 2010), www.ussc.gov/Legislative_and_Public_Affairs/Public_ Hearings_and_Meetings/20100916/20100916_Minutes.pdf. That the Commission has promulgated a not-yet-adopted amendment that is very likely to be adopted and that would result in reduced Guidelines ranges does not render a district court's failure to grant a variance substantively unreasonable. This is not to say that the district court could not have granted the requested variance after considering all of the § 3553 factors and "the totality of the circumstances." *Carty*, 520 F.3d at 993.

**[8]** Therefore, the district court did not improperly include recency points in calculating the Guidelines range of 46 to 57 months of imprisonment. Though the government recommended 57 months of imprisonment, the district court reasonably imposed a sentence of 46 months of imprisonment. Had the district court *not* included recency points in Ruiz's criminal history score, the 46 months would also have been at the midpoint of the applicable Guidelines range of 41-51 months. We therefore conclude that the district court's rejection of this argument did not render the sentence substantively unreasonable.

## 2.   Good Time Calculation

Ruiz argues that the court erred by rejecting a variance to account for what he maintains is a difference in the way the Sentencing Commission and the Bureau of Prisons (BOP) calculate good-time credits. The Guidelines, he argues, overcompensate for credits that will never be earned, and therefore his sentence of imprisonment should have been reduced from the low end of the Guidelines range by an additional one month (rounded up from 19 days).

**[9]** This argument is an attempt to reframe the arguments raised by the petitioners in *Barber v. Thomas*, 130 S. Ct.

2499, 2502 (2010), who challenged the BOP's methodology for calculating good-time credits under 18 U.S.C. § 3624(b)(1). § 3624(b)(1) permits an award of up to 54 days of good-time credit per year of imprisonment. The BOP calculates such credits on the basis of time *served*, rather than time imposed. Under the BOP's calculations, a well-behaved prisoner serving a ten-year term may receive 470 days of good-time credit. *Id.* at 2503. At the end of each year, the BOP subtracts 54 days from the sentence. *Id.* at 2502. A consistently well-behaved prisoner serving a ten-year term, however, will get out *before the end* of that sentence. *Id.* at 2513 (Kennedy, J., dissenting). Thus, the BOP's methodology in calculating credit precludes prisoners from earning credit they would otherwise have earned had they not been released early for good behavior. *Id.* at 2505. The *Barber* petitioners argued that they should instead be able to earn up to 540 days (54 days per year) of credit while serving a ten-year sentence, regardless of when they are released. *Id.* at 2503. The Supreme Court rejected this argument, holding that the BOP's method of calculation reflected the most natural reading of the statute. *Id.* at 2504.

In support, the *Barber* petitioners cited both a statement the Sentencing Commission made in 1987 and "a reference in later editions of the Guidelines to a potential credit of 'approximately fifteen percent for good behavior,' " *id.* at 2508, which, they argued, suggested that the "Commission set its Guideline ranges with the expectation that well-behaved prisoners would receive good time credit of up to 15% of the sentence imposed, not 15% of the time actually served."[10] *Id.* Ruiz, relying on exactly the same evidence, contends that it actually demonstrates that all Guidelines sentences are too long — by 19 days in his case.

**[10]** Regardless of whether Ruiz is correct that § 3553's parsimony principle would mandate a variance due to the

---

[10]54 days per year is approximately 15%.

time-imposed and time-served assumptions by the Commission and the BOP, the Supreme Court has already concluded that the evidence is inconclusive as to whether the BOP and the Commission acted on *different* assumptions:

> [W]e can find no indication that the Commission, in writing its Supplementary Report or in the Guidelines themselves, considered or referred to the particular question here before us, that is whether good time credit is to be based on time served or the sentence imposed. The Guidelines Manual itself, a more authoritative account of the Commission's interpretive views than the Supplementary Report, says nothing directly on that subject. . . . Because the Commission has expressed no view on the question before us, we need not decide whether it would be entitled to deference had it done so. If it turns out that the calculation of good time credit based on prison time served rather than the sentence imposed produces results that are more severe than the Commission finds appropriate, the Commission remains free to adjust sentencing levels accordingly.

*Id.* at 2508. Ruiz concedes that the Supreme Court did not determine whether the Sentencing Commission and the BOP use different credit systems. More than that, however, the Supreme Court actually concluded that the very evidence Ruiz now cites did not even address whether the Commission attempted to compensate for good-time credits on the basis of whether they were calculated as a percentage of the time sentenced or time served. Accordingly, we find that Ruiz's sentence is not substantively unreasonable on this ground.

## B.   Procedural Error

**[11]** Ruiz argues that the district court committed procedural error by failing to provide a sufficient explanation for its rejection of the requested variance based on recency points

and good time credits. The court did not explicitly state that it rejected the variance until the end of the sentencing hearing, when the defense counsel asked whether the court rejected both bases for the variance, and the court responded "yes." However, the court began the sentencing hearing by stating that it had reviewed "the P.S.R., Government's sentencing summary chart, the rap sheet summary, the objections to the P.S.R., the Defendant's request for departures, the revised sentencing summary chart, Defendant's sentencing memorandum, the letters that were submitted therewith, and the addendum to the P.S.R." The court then explained thoroughly, with reference to numerous § 3553(a) factors, the basis for its conclusion that a sentence of 46 months was appropriate. The district court is not required to provide a detailed explanation as to each of its reasons for rejecting every argument made by counsel. *See*, *e.g.*, *Carty*, 520 F.3d at 992; *see also Rita*, 551 U.S. at 359 ("Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively."). Given that the court reviewed all the relevant submitted materials, correctly calculated the applicable range using the Guidelines in effect at the time of sentencing, and thoroughly explained its reasons for imposing the sentence of imprisonment it did, the district court did not commit procedural error by not offering a more in-depth explanation of why it rejected the variances Ruiz requested.

## V.

Ruiz also argues that, given his history, background, and age, the district court imposed a sentence that was greater than necessary to meet the sentencing purposes set forth in 18 U.S.C. § 3553(a)(2), and that his sentence was therefore substantively unreasonable. *See* 18 U.S.C. § 3553(a). In particular, Ruiz argues that: (1) his history reflects financial hardship and lack of opportunity; (2) while his relationship with the mother of his young daughter is now over, he reentered the

country only to be with his daughter; (3) he lived continuously in the United States since his youth, and had culturally assimilated; (4) he has no history of substance abuse; (5) a letter from his sister states that he needs to return to Mexico to assist with the care of his elderly parents; (6) while in custody he behaved well; and (7) his age of thirty-seven "places him well beyond the prime period of highest recidivism." Conceding that his rape conviction is serious, Ruiz argues that his criminal history is mitigated because that rape conviction was his sole prior conviction, and the state judge imposed a low-term sentence, and so must have found mitigating circumstances.

These are the same arguments that the district court explicitly addressed in imposing Ruiz's sentence. The district court noted that there were "a number of aggravating facts," including Ruiz's criminal history, though the seriousness of the rape conviction was tempered by the fact that the relevant conduct occurred in 2002. The court discussed the letter from Ruiz's sister, and observed that "[t]here is, obviously, some — there is a very good and decent side to you that many people see and experience, and those are mitigating factors that the court does consider." Noting that the probation department and government had recommended a 57-month sentence, the district court concluded that "a sentence at the low end at 46 months is the right, just and fair sentence under all of the circumstances."

**[12]** As the record as a whole reflects rational and meaningful consideration of the § 3553(a) factors, *see Ellis*, 641 F.3d at 423, Ruiz's sentence was not substantively unreasonable.

## VI.

Ruiz also argues that the district court erred in applying § 1326(b)(2) because the fact of his prior conviction for commission of an aggravated felony was not charged in an indict-

ment or proved to a jury. Ruiz concedes that this argument is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), but argues that *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), and *United States v. O'Brien*, 130 S. Ct. 2169 (2010) in effect overrule *Almendarez-Torres*. We recently addressed this argument, and concluded "that *Almendarez-Torres* has not been overruled by *Nijhawan* and continues to constitute binding authority." *United States v. Valdovinos-Mendez*, 641 F.3d 1031, 1036 (9th Cir. 2011) (citing *United States v. Leyva Martinez*, 632 F.3d 568, 569-70 (9th Cir. 2011) (per curiam)).[11]

## VII.

We hold that a conviction of forcible rape under California Penal Code § 261(a)(2) is categorically a crime of violence under U.S.S.G. § 2L1.2. We also conclude that the district court committed no error in sentencing Ruiz to 46 months imprisonment, the low end of the Guidelines range. Nor did the district court err by enhancing Ruiz's sentence under 8 U.S.C. § 1326(b) due to his 2002 forcible rape conviction.

**AFFIRMED**

---

[11]While neither *Valdovinos-Mendez* nor *Leyva Martinez* mentions *O'Brien*, the Supreme Court in *O'Brien* itself cited to *Almendarez-Torres* as the "one exception [that] has been established" to the general rule that elements of a crime must be charged in an indictment and proved to a jury beyond a reasonable doubt. 130 S. Ct. at 2174. Given this reference, it is not possible to read *O'Brien* as invalidating *Almendarez-Torres*.