Filed 9/26/22  P. v. Mbugua CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN MBUGUA,<br><br>Defendant and Appellant. | B314153<br><br>(Los Angeles County<br>Super. Ct. No. A774712) |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor Hunter, Judge.  Affirmed.

Christopher Lionel Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

Decades ago, John Mbugua pled guilty to forcible rape. Facing deportation because of that conviction, Mbugua moved to vacate his conviction under Penal Code[1] section 1473.7, claiming that when he entered the plea, he was not asked whether he understood the immigration consequences of it and was not advised mandatory deportation was a consequence of it. He further claimed that these alleged errors prejudiced him. The trial court rejected these contentions, and so do we. Accordingly, we affirm the order denying the motion.

## BACKGROUND

I.    Mbugua's guilty plea

The trial court summarized the facts underlying Mbugua's crime as follows. Someone shot the victim and pushed her out of a car.[2] Mbugua happened upon the already wounded victim and raped her. Police officers caught Mbugua in the act, and he first told them she was his wife and then said she was a prostitute.

In 1986, Mbugua pled guilty to forcible rape. (§ 261, subd. (2).) Counsel represented Mbugua. At the plea hearing, the prosecutor gave the advisements, asking Mbugua if he understood the charge and if he wanted to plead guilty to it. As to each question, Mbugua said he understood. But when asked if he understood his right to a jury trial, Mbugua said he did "[n]ot exactly" understand that right. After conferring with his counsel, Mbugua represented that he understood and waived his right to a

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    The trial court apparently based its summary on a preliminary hearing transcript, which is not part of the record on appeal.

2

jury trial. Similarly, when asked if he understood his right to confront and to cross-examine witnesses, Mbugua said he only "[v]aguely" understood. The prosecutor explained the right, and Mbugua said he understood and gave it up.

When the prosecutor came to the immigration advisement, he said, "If you are not a citizen of the United States, this conviction could result in deportation, denial of citizenship, or denial of re-entry into the United States if you left the United States. [¶] If you're on probation or parole on some other case, this conviction could result in a revocation of that parole or probation, and additional time on such other case, if there is another case. [¶] Do you understand that?" Mbugua answered, "Yes."

Thereafter, when told a fine would be imposed, Mbugua again said he did not understand. After conferring with counsel, Mbugua said he understood.

The trial court found that the waivers were knowingly, intelligently, and "understandably" given and sentenced Mbugua to the high term of eight years.[3]

II. Mbugua moves to vacate his conviction or sentence.

Apparently in 1990,[4] Mbugua was ordered removed from the country. But he remains in the United States, subject to weekly immigration check-ins, because he cannot currently return to his birth country of Somalia, which is experiencing a civil war.

---

[3] The judgment was affirmed on appeal. (*People v. Mbugua* (1987, B023054 [nonpub. opn.].)

[4] Mbugua's immigration attorney referred to the "Immigration Judge's decision to remove [Mbugua] from the country back in 1990 and to not grant" him asylum.

In 2021, Mbugua moved under section 1016.5 to vacate his conviction or sentence. He thereafter amended his motion to move for the same relief under section 1473.7. In his amended motion, Mbugua argued that he was not adequately advised of the immigration consequences of his plea because neither the trial court nor his counsel told him that his guilty plea would lead to his deportation and prejudice his ability to naturalize, become a citizen, and pursue other immigration rights. Had he known of these consequences, he would not have pled guilty. Mbugua said he became aware of the actual or potential immigration consequences of his plea when he retained an immigration attorney. As to his personal circumstances, Mbugua said he has been sober since 1997, is a certified substance abuse counselor, and works as a drug counselor. He also submitted letters of support attesting to his good character. In 2020, he married a United States citizen.

In further support of his motion, Mbugua submitted evidence that the license of the attorney who represented him at his plea hearing in 1986 was now inactive. Also, Mbugua's immigration attorney submitted a declaration stating that Mbugua was unable to remember the details of his crime because he had been young[5] and under the influence of drugs. The immigration attorney concluded that Mbugua was not aware of the immigration consequences of his guilty plea until the immigration attorney informed Mbugua of them in July 2020.

After a hearing, the trial court denied the motion, finding that Mbugua failed to meet his burden to show he did not adequately understand the consequences of his plea.

---

[5] According to the trial court, Mbugua was 29 years old when he committed the crime.

## DISCUSSION

Mbugua contends that the trial court erred in denying his motion because he met his burden of establishing that he was misadvised about the immigration consequences of his guilty plea, he never said he understood those consequences, and he was prejudiced by the misadvisement. After providing an overview of section 1473.7, we explain why we reject Mbugua's contentions.

I.     Overview of section 1473.7

Mandatory deportation is an immigration consequence when a defendant is convicted of an aggravated felony under federal immigration law. (*Moncrieffe v. Holder* (2013) 569 U.S. 184, 187–188; 8 U.S.C. § 1228(c).) The "prospect of deportation 'is an integral part,' and often even 'the most important part,' of a noncitizen defendant's calculus in responding to certain criminal charges." (*People v. Vivar* (2021) 11 Cal.5th 510, 516 (*Vivar*).) The Legislature and courts have therefore "sought to ensure these defendants receive clear and accurate advice about the impact of criminal convictions on their immigration status, along with effective remedies when such advice is deficient." (*Ibid.*; see also *Padilla v. Kentucky* (2010) 559 U.S. 356, 374 [accused entering a guilty plea must be advised of deportation consequences].)

Section 1473.7 is designed to further that goal. Under that section, a noncitizen defendant who is no longer in criminal custody may move to vacate a conviction or sentence on the basis that the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept

5

the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (*Id.*, subd. (a)(1).) A trial court shall grant a motion to vacate a conviction or sentence if the defendant establishes one of the grounds for relief in subdivision (a) by a preponderance of the evidence. (*Id.*, subd. (e)(1).)

The moving defendant bears the burden of showing error that damaged the defendant's ability to meaningfully understand, defend, or knowingly accept the actual or potential adverse immigration consequences of the plea *and* that the error was prejudicial. (*Vivar, supra*, 11 Cal.5th at p. 528; *People v. Mejia* (2019) 36 Cal.App.5th 859, 862.) The focus of the prejudice inquiry is on the defendant's mindset and what the defendant understood when the plea was taken. (*Mejia*, at p. 866.) Prejudice depends on whether it is reasonably probable the defendant would have rejected the plea if the defendant correctly understood its immigration consequences. (*Vivar*, at pp. 528–529.) Factors particularly relevant to this totality-of-the-circumstances inquiry "include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Id.* at pp. 529–530.) Courts have long required the defendant to corroborate the assertion with objective evidence he would not have entered the plea had he understood it required his deportation.[6] (*Id.* at p. 530.)

---

[6] The standard for determining the sufficiency of such corroborating evidence is an issue pending review in *People v.*

We independently review an order denying a motion to vacate a conviction under section 1473.7. (*Vivar*, *supra*, 11 Cal.5th at pp. 524–528.) Under that standard of review, we give deference to the trial court's factual findings that are based on the credibility of witnesses. (*Id.* at p. 527.) But where, as here, the facts derive from a "cold record"—i.e., written declarations and other documents—the appellate and trial courts are in the same position to interpret them. (*Id.* at p. 528.)

II.     Error

Mbugua asserts that two errors occurred with his advisement. He first focuses on the plea colloquy, asserting he was not asked if he understood the immigration advisement and he never said he understood it. Second, the trial court merely advised he "could" be deported and his attorney never advised him he would be deported.

As to Mbugua's first argument, he points out that when he was given the immigration advisement, he was not immediately asked if he understood it. Instead, the prosecutor gave the immigration advisement, then advised of the consequence of being on probation or parole on another case, and *then* asked if Mbugua understood "that?" He further points out that this portion of the plea colloquy contrasts with the colloquy's general pattern in which the prosecutor asked one question or gave one advisement at a time and immediately asked Mbugua if he understood that single question or advisement. So when Mbugua said he understood, he was saying he only understood the last

_____

*Espinoza* (May 28, 2021, F079209) 2021 WL 2177264 [nonpub. opn.], review granted Sept. 15, 2021, S269647.

thing stated, i.e., the consequences of being on parole or probation.

This argument is unpersuasive. Viewing the plea colloquy as a whole demonstrates that Mbugua understood what was being said to him and, more to the point, spoke up when he didn't. When told about his right to a jury trial, Mbugua said he did "not exactly" understand that right. When told about his right to confront and cross-examine witnesses, Mbugua said he "vaguely" understood. And when told he would have to pay fines, Mbugua again stated he did not understand. Mbugua thus objected *three* times when he did not understand something. Having shown no compunction about asking for clarification when he did not understand something, it is extremely unlikely Mbugua would have remained silent if he did not understand the immigration advisement. It is further unlikely that when Mbugua said he understood "that," he was saying he understood only one part of what he had just been told—the consequences of being on parole or probation—and did not understand the other part—the immigration advisement. We therefore do not agree that the way in which Mbugua was asked whether he understood the immigration advisement and answered the question is evidence he did not understand and assent to it.

Mbugua next asserts he was merely advised his conviction *could* result in deportation rather than that deportation was mandatory.[7] The immigration advisement is in section 1016.5,

---

[7] There is no dispute that Mbugua's guilty plea required mandatory deportation. (See generally *United States v. Ruiz-Apolonio* (9th Cir. 2011) 657 F.3d 907, 921 [forcible rape is violent crime under federal law]; 8 U.S.C. § 1101(a)(43)(F) [conviction

subdivision (a). It states that a trial court must advise a defendant entering a plea of guilty as follows, "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (§ 1016.5, subd. (a).) This advisement's use of the phrase "may have" is an inadequate immigration advisement for defendants charged with serious controlled substance offenses. (*People v. Patterson* (2017) 2 Cal.5th 885, 895; accord, *People v. Soto* (2022) 79 Cal.App.5th 602, 609.) Under *Patterson*, where a defendant has been convicted of a crime that mandates a specific immigration consequence, the defendant must be advised of it. Therefore, telling Mbugua he "could" be deported failed to inform him he would be deported, i.e., that his deportation was mandatory.

Nonetheless, we do not agree that such error requires reversal, as Mbugua argues, citing *People v. Ruiz* (2020) 49 Cal.App.5th 1061. In that case, the defendant was given the standard section 1016.5 advisement and pled guilty to possessing cocaine for sale. (*Id.* at p. 1063.) Thirty years later, Ruiz moved to vacate her conviction under section 1473.7, arguing that the advisement failed to inform her that her plea rendered her ineligible for United States citizenship and that her attorney never so advised her. The trial court denied the motion on procedural grounds, including that it had no jurisdiction to hear the motion. The Court of Appeal disagreed there was a jurisdictional bar, found that the section 1016.5 advisement was

---

becomes an aggravated felony under federal immigration law when sentence exceeds one year].)

9

inadequate under *Patterson*, and remanded for further proceedings. *Ruiz* did not direct the trial court to set aside the conviction but instead directed it to hold a hearing. The case therefore does not support the proposition that a motion to vacate a conviction under section 1473.7 must be granted when a defendant is misadvised under section 1016.5. To find otherwise would render meaningless section 1473.7's requirement that any error must be prejudicial.

In addition to his claim that the section 1016.5 advisement was deficient, Mbugua claims his counsel failed to advise him he would be deported. This assertion is supported only by Mbugua's statement that his counsel never told him his plea would lead to his deportation or prejudice his ability to naturalize and other immigration rights. While Mbugua's bare statement is evidence, it is nonetheless self-serving and uncorroborated. (See, e.g., *People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223–224 [allegation trial counsel failed to properly advise defendant was "meaningless" in absence of objective corroborating evidence]; *People v. Tapia* (2018) 26 Cal.App.5th 942, 953 [defendant's self-serving statement counsel did not advise of actual immigration consequences was contradicted by plea transcript showing counsel wanted to research how plea would affect client's immigration status].) Where courts have reversed orders denying motions to vacate under section 1473.7, other evidence corroborated the defendant's statement. (See, e.g., *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 907 [counsel's contemporaneous notes suggested she did not explain client faced mandatory deportation] (*Manzanilla*); *People v. Camacho* (2019) 32 Cal.App.5th 998, 1003 [counsel couldn't recall if he followed practice of telling client plea could result in deportation].)

In contrast, Mbugua did not establish that he tried to contact his former counsel, obtain his file, or otherwise get evidence from former counsel to corroborate his statement. Nor did Mbugua show his former counsel was unavailable. Instead, Mbugua submitted a document from the state bar showing that his former counsel's license to practice law is inactive. Inactive status does not necessarily mean unavailable.

Although we therefore do not agree that Mbugua established his counsel failed to tell him he would be deported, we will assume error based on the section 1016.5 advisement given at the plea hearing. Even so assuming, Mbugua still had to show the error was prejudicial. We therefore turn to that issue.

III.    Any error was not prejudicial.

As we have said, Mbugua bore the burden of showing a reasonable probability he would have rejected the plea had he correctly understood its immigration consequences. (*Vivar*, *supra*, 11 Cal.5th at p. 529.) In evaluating whether a defendant has met this burden, courts should not upset a plea solely because of a defendant's post hoc assertions about how the defendant would have pleaded but for the deficiencies. (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78.) Courts instead should look to contemporaneous evidence to substantiate a defendant's assertions. (*Ibid*.)

Mbugua asserts that had he known mandatory deportation was a consequence of his guilty plea, he would have rolled the dice and gone to trial. However, Mbugua did not establish that avoiding deportation was of paramount importance to him in 1986, when he entered the guilty plea. Beyond Mbugua's bare statement he would not have entered the plea had he understood its immigration consequences, he provided no contemporaneous

11

evidence to support that statement.  Such evidence is generally critical to establishing prejudice; that is, those cases that have found the requisite prejudice involved defendants who introduced evidence of their significant ties to the United States when they entered their pleas.  (See, e.g., *Vivar, supra*, 11 Cal.5th at pp. 530–531 [defendant had children, grandchildren, and an ill wife in U.S. but no ties to birth country]; *People v. Alatorre* (2021) 70 Cal.App.5th 747, 771 [defendant had lived in U.S. since preschool, entire family lived here, he was married and had children]; *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 324–325 [defendant had "deep, lifelong ties" to U.S.]; *People v. Mejia, supra*, 36 Cal.App.5th at p. 872 [defendant had lived in U.S. for eight years, since he was 14; wife, infant son, mother and six siblings lived here]; *People v. Camacho, supra*, 32 Cal.App.5th at p. 1011 [defendant had lived in U.S. over 30 years, since he was two, attended school here, had wife and children, and was employed].)

In contrast to these cases, Mbugua provided no details about his circumstances when he entered the plea.  He did not state how long he had been in the United States, whether he had family or friends here, and whether he went to school, had a job, or owned property here.  In short, he did not establish ties to the United States beyond his mere presence here.  While the showing Mbugua did make—he has rehabilitated, he works as a drug counselor, and he is married to a United States citizen—makes him sympathetic, the test for prejudice considers what he would have done *at the time of the plea* and not the consequences he currently faces.  (See *People v. Martinez* (2013) 57 Cal.4th 555, 564.)

Mbugua also did not argue or introduce evidence that he had no ties to Somalia or there was some reason why he cannot return there. While his immigration attorney obliquely referred to an asylum request, the record contains no details about any such request. (Compare *Manzanilla, supra,* 80 Cal.App.5th at p. 912 [defendant established significant ties to U.S., no ties to Mexico, and fear of persecution if returned because of sexual orientation].)

Given the absence of any showing that avoiding deportation was the key factor in Mbugua's decision making, we cannot agree with Mbugua's assertion that the record shows that had he known the actual immigration consequences, he would have gone to trial because he was facing eight years either way.[8] (See generally *Lee v. United States* (2017) 137 S. Ct. 1958, 1967 [where avoiding deportation is determinative factor, defendant might choose to throw a " 'Hail Mary' " at trial rather than accept even a plea that shaved off time].) Instead, we cannot discount that Mbugua did gain something by avoiding trial. Where, as it appears here, that the case was strong and the facts particularly heinous, Mbugua could have wanted to avoid the time and anxiety associated with going to trial and facing one's victim and a jury when the outcome in either scenario was likely years in prison and then deportation.

---

[8] Mbugua points out that the trial court mistakenly thought he entered a negotiated plea under which he accepted a sentence of six years instead of eight years to show he received no benefit of a bargain and therefore had nothing to lose by going to trial. The trial court's reasoning, mistaken or not, is irrelevant because our review is independent. (*Vivar, supra,* 11 Cal.5th at pp. 524–528.)

Nor did Mbugua present evidence that at the time of the plea, he "had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar, supra,* 11 Cal.5th at p. 530.) Instead, he speculates he could have pled guilty to rape with a 364-day sentence and to some other combination of crimes not considered ones of violence to get to the desired sentence of eight years. Speculation is not contemporaneous evidence that alternative, non-deportable dispositions would have been available and acceptable to the prosecutor. (See *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 665 [such evidence could be in form of expert declaration].) The record does not show that any other disposition was discussed or offered. Mbugua did not introduce, for example, any contemporaneous notes he or counsel made about possible dispositions. (See, e.g., *Manzanilla, supra,* 80 Cal.App.5th at p. 908 [defendant introduced counsel's notes about plea].)

This case is also unlike *Manzanilla* because in that case, the prosecutor's initial plea offer was just one additional day in jail than the defendant needed to prevent the conviction from being an aggravated felony. However, there was no evidence defense counsel tried to reduce the offer by one day or that such an effort would have been futile. (*Manzanilla, supra,* 80 Cal.App.5th at p. 909.) Here, it is very uncertain any favorable offer would have been made or been palatable to the prosecution given the brutality and callousness of Mbugua's crime: his victim had just been shot and thrown out of a car, and police officers caught him in the act of raping her.

We therefore conclude that Mbugua failed to show a reasonable probability he would have rejected the plea if he correctly understood its immigration consequences.

14

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


LAVIN, J.


ADAMS, J.*

---

*    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.