[No. S030379. May 23, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
HECTOR GUILLERMO INIGUEZ, Defendant and Appellant.

**COUNSEL**

Russell S. Babcock for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster, Raquel M. Gonzalez, Leslie B. Fleming and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ARABIAN, J.**—Defendant Hector Guillermo Iniguez admitted that on the night before Mercy P.'s wedding, he approached her as she slept on the living room floor, removed her pants, fondled her buttocks, and had sexual intercourse with her. He further conceded that he had met Mercy for the first time that night, and that Mercy did not consent to any sexual contact or

intercourse. The Court of Appeal reversed defendant's conviction for rape on the grounds that the evidence of force or fear of immediate and unlawful bodily injury was insufficient. We granted review to determine whether there was sufficient evidence to support the verdict, and to delineate the relationship between evidence of fear and the requirement under Penal Code section 261, subdivision (a)(2), that the sexual intercourse be "accomplished against a person's will," in a case where lack of consent is not disputed. We reverse the Court of Appeal.

## I.  FACTS AND PROCEDURAL BACKGROUND

On June 15, 1990, the eve of her wedding, at approximately 8:30 p.m., 22-year-old Mercy P. arrived at the home of Sandra S., a close family friend whom Mercy had known for at least 12 years and considered an aunt. Sandra had sewn Mercy's wedding dress, and was to stand in at the wedding the next day for Mercy's mother who was unable to attend. Mercy was planning to spend the night at her home.

Mercy met defendant, Sandra's fiancé, for the first time that evening. Defendant was scheduled to stand in for Mercy's father during the wedding.

Mercy noticed that defendant was somewhat "tipsy" when he arrived. He had consumed a couple of beers and a pint of Southern Comfort before arriving at Sandra's. Mercy, Sandra, and defendant celebrated Mercy's impending wedding by having dinner and drinking some wine. There was no flirtation or any remarks of a sexual nature between defendant and Mercy at any time during the evening.

Around 11:30 p.m., Mercy went to bed in the living room. She slept on top of her sleeping bag. She was wearing pants with an attached skirt, and a shirt. She fell asleep at approximately midnight.

Mercy was awakened between 1:00 and 2:00 a.m. when she heard some movements behind her. She was lying on her stomach, and saw defendant, who was naked, approach her from behind. Without saying anything, defendant pulled down her pants, fondled her buttocks, and inserted his penis inside her. Mercy weighed 105 pounds. Defendant weighed approximately 205 pounds. Mercy "was afraid, so I just laid there." "You didn't try to resist or escape or anything of that nature because of your fear?" "Right." Mercy further explained that she "didn't know how it was at first, and just want[ed] to get on with my wedding plans the next day." Less than a minute later,

defendant ejaculated, got off her, and walked back to the bedroom. Mercy had not consented to any sexual contact.

Officer Fragoso, who interviewed Mercy several days after the attack, testified that she told him she had not resisted defendant's sexual assault because, "She said she knew that the man had been drinking. She hadn't met him before; he was a complete stranger to her. When she realized what was going on, she said she panicked, she froze. She was afraid that if she said or did anything, his reaction could be of a violent nature. So she decided just to lay still, wait until it was over with and then get out of the house as quickly as she could and get to her fiancee [*sic*] and tell him what happened."

Mercy immediately telephoned her fiancé Gary and left a message for him. She then telephoned her best friend Pam, who testified that Mercy was so distraught she was barely comprehensible. Mercy asked Pam to pick her up, grabbed her purse and shoes, and ran out of the apartment. Mercy hid in the bushes outside the house for approximately half an hour while waiting for Pam because she was terrified defendant would look for her.

Pam arrived about 30 minutes later, and drove Mercy to Pam's house. Mercy sat on Pam's kitchen floor, her back to the wall, and asked Pam, "[D]o I look like the word 'rape' [is] written on [my] face?" Mercy wanted to take a shower because she felt dirty, but was dissuaded by Pam. Pam telephoned Gary, who called the police.

Gary and his best man then drove Mercy to the hospital, where a "rape examination" was performed. Patricia Aiko Lawson, a blood typing and serology expert, testified that there was a large amount of semen present in Mercy's vagina and on the crotch area of her underpants. A deep vaginal swab revealed that many sperm were whole, indicating intercourse had occurred within a few hours prior to the rape examination. ABO blood group, blood type B, which was consistent with defendant's, but not Gary's or Mercy's blood type, was found on the internal and external vaginal swabs and on the underpants.

The following day, Mercy and Gary married. Gary picked up the wedding dress from Sandra while Mercy waited in the car. Neither Sandra nor defendant participated in the wedding.

Defendant was arrested the same day. When asked by the arresting officer if he had had sexual intercourse with Mercy, defendant replied, "I guess I did, yes."

Dr. Charles Nelson, a psychologist, testified as an expert on "rape trauma syndrome." He stated that victims respond in a variety of ways to the trauma of being raped. Some try to flee, and others are paralyzed by fear. This latter response he termed "frozen fright."

Defendant conceded at trial that the sexual intercourse was nonconsensual. Defendant testified that he fondled Mercy without her consent, pulled down her pants, had sexual intercourse, and thereafter ejaculated. However, defense counsel argued that the element of force or fear was absent. "So if he was doing anything, it wasn't force or fear . . . . It's a situation where it looks to him like he can get away with it and a situation where his judgment is flown out the window . . . . He keeps doing it, probably without giving much thought to it, but certainly there is nothing there to indicate using fear ever entered his mind. What he was doing was taking advantage, in a drunken way, of a situation where somebody appeared to be out of it."

The jury was instructed on both rape pursuant to then Penal Code[1] section 261, subdivision (2), and sexual battery.[2] Upon the jury's request for further instruction on the definition of fear of immediate and unlawful bodily injury, the court instructed in relevant part, " '[F]ear' means, a feeling of alarm or disquiet caused by the expectation of danger, pain, disaster or the like." "Verbal threats are not critical to a finding of fear of unlawful injury, threats can be implied from the circumstances or inferred from the assailant's conduct. A victim may entertain a reasonable fear even where the assailant does not threaten by words or deed."

The jury found defendant guilty of rape. He was sentenced to state prison for the midterm of six years.

The Court of Appeal reversed, concluding that there was insufficient evidence that the act of sexual intercourse was accomplished by means of force or fear of immediate and unlawful bodily injury. On the issue of fear, the court stated: "While the [defendant] was admittedly much larger than the small victim, he did nothing to suggest that he intended to injure her. No

---

[1] All statutory references contained herein are to the California Penal Code unless otherwise indicated.

[2] Sexual battery is defined in section 243.4, which at the time of the crime provided in relevant part:

"(a) Any person who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of sexual battery. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(f)(2) 'Sexual battery' does not include the crimes defined in Section 261 . . . ."

coarse or sexually suggestive conversation had taken place. Nothing of an abusive or threatening nature had occurred. The victim was sleeping in her aunt's house, in which screams presumably would have raised the aunt and interrupted the intercourse. Although the assailant was a stranger to the victim, she knew nothing about him which would suggest that he was violent. [The] event of intercourse is singularly unusual in terms of its ease of facilitation, causing no struggle, no injury, no abrasions or other marks, and lasting, as the victim testified, " 'maybe a minute.' " The court modified the judgment, reducing defendant's conviction of rape under section 261, former subdivision 2, to the offense of sexual battery under section 243.4, subdivision (a), and remanded for resentencing.

We granted the Attorney General's petition for review.

## II. Discussion

■ The test on appeal for determining if substantial evidence supports a conviction is whether " 'a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt.' " (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) In making this determination, we " 'must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*Ibid.*)

Prior to 1980, section 261, subdivisions 2 and 3 "defined rape as an act of sexual intercourse under circumstances where the person resists, but where 'resistance is overcome by force or violence' or where 'a person is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution . . . .' " (*People* v. *Barnes* (1986) 42 Cal.3d 284, 292 [228 Cal.Rptr. 228, 721 P.2d 110] [*Barnes*]; Stats. 1979, ch. 994, § 1, p. 3383.) Under the former law, a person was required to either resist or be prevented from resisting because of threats. (*Barnes, supra,* 42 Cal.3d at p. 295.)

Section 261 was amended in 1980 to eliminate both the resistance requirement and the requirement that the threat of immediate bodily harm be accompanied by an apparent power to inflict the harm.[3] (See *Barnes, supra,* 42 Cal.3d at p. 302; Enrolled Bill Rep., Youth and Adult Correctional Agency, 3d reading analysis of Assem. Bill No. 2899 (1979-1980 Reg.

---

[3]As amended in 1980, section 261, subdivision 2, provided: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: . . . [¶] 2  Where it is accomplished against a person's will by

Sess.) July 9, 1980 [Enrolled Bill Rep.].) As the legislative history explains, "threat is eliminated and the victim need only fear harm. The standard for injury is reduced from great and immediate bodily harm to immediate and unlawful bodily injury." (Enrolled Bill Rep., *supra*, at p. 2.)

In discussing the significance of the 1980 amendments in *Barnes*, we noted that "studies have demonstrated that while some women respond to sexual assault with active resistance, others 'freeze,' " and "become helpless from panic and numbing fear." (*Barnes, supra*, 42 Cal.3d at p. 299.) In response to this information, "For the first time, the Legislature has assigned the decision as to whether a sexual assault should be resisted to the realm of personal choice." (*Id.* at p. 301.) "By removing resistance as a prerequisite to a rape conviction, the Legislature has brought the law of rape into conformity with other crimes such as robbery, kidnapping and assault, which require force, fear, and nonconsent to convict. In these crimes, the law does not expect falsity from the complainant who alleges their commission and thus demand resistance as a corroboration and predicate to conviction." (*Id.* at p. 302.)

At the time of the crime in this case, section 261, subdivision (2), provided, "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: . . . [¶] (2) Where it is accomplished against a person's will by means of force, violence, or fear of immediate and unlawful bodily injury on the person or another."[4] ▮ The deletion of the resistance language from section 261 by the 1980 amendments thus effected a change in the purpose of evidence of fear of immediate and unlawful injury. Prior to 1980, evidence of fear was directly linked to resistance; the prosecution was required to demonstrate that a person's *resistance* had been overcome by force, or that a person was prevented from resisting by threats of great and immediate bodily harm. (See *Barnes, supra*, 42 Cal.3d at p. 297 ["In our state, it had long been the rule that the resistance required by former section 261, subdivision 2, was only that which would reasonably manifest refusal to

---

means of force or fear of immediate and unlawful bodily injury on the person or another." (Stats. 1980, ch. 587, § 1, p. 1595.)

[4]In 1990, the Legislature amended section 261, subdivision (2), to add duress and menace, and added subdivisions (b) and (c) to define these terms. In addition, the Legislature added subdivision designation (a), and redesignated former subdivisions (1)-(7) to be subdivisions (a)(1)-(a)(7). All relevant parts of section 261 remain substantively identical. Section 261, subdivision (a)(2), currently provides:

"(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:

" . . . . . . . . . . . . . . . . . . . . . . .

"(2) Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."

consent to the act of sexual intercourse."]; see *People* v. *Newlan* (1959) 173 Cal.App.2d 579, 581 [343 P.2d 618].) As a result of the amendments, evidence of fear is now directly linked to the overbearing of a victim's will; the prosecution is required to demonstrate that the act of sexual intercourse was accomplished against the person's *will* by means of force, violence, or fear of immediate and unlawful bodily injury.

■ In *Barnes*, we then addressed the question of the role of force or fear of immediate and unlawful bodily injury in the absence of a resistance requirement. We stated that "[a]lthough resistance is no longer the touch-stone of the element of force, the reviewing court still looks to the circum-stances of the case, including the presence of verbal or nonverbal threats, or the kind of force that might reasonably induce fear in the mind of the victim, to ascertain sufficiency of the evidence of a conviction under section 261, subdivision (2)." (*Barnes, supra,* 42 Cal.3d at p. 304.) "Additionally, the complainant's conduct must be measured against the degree of force mani-fested or in light of whether her fears were genuine and reasonably ground-ed." (*Ibid.*) "In some circumstances, even a complainant's unreasonable fear of immediate and unlawful bodily injury may suffice to sustain a conviction under section 261, subdivision (2), if the accused knowingly takes advantage of that fear in order to accomplish sexual intercourse." (*Id.* at p. 304, fn. 20.) "[T]he trier of fact 'should be permitted to measure consent by weighing both the acts of the alleged attacker and the response of the alleged victim, rather than being required to focus on one or the other.' " (*Id.* at p. 304.) We concluded that "[i]n light of the totality of [the] circumstances" in that case, "a reasonable juror could have found that [the victim's] subsequent compli-ance with" defendant's insistence on sexual intercourse "was induced either by force, fear, or both, and, in any case, fell short of a consensual act."[5] (*Id.* at p. 305.)

■ Thus, the element of fear of immediate and unlawful bodily injury has two components, one subjective and one objective. The subjective component asks whether a victim genuinely entertained a fear of immediate and unlawful bodily injury sufficient to induce her to submit to sexual intercourse against her will. In order to satisfy this component, the extent or seriousness of the injury feared is immaterial. (See *People* v. *Harris* (1951) 108 Cal.App.2d 84, 89 [238 P.2d 158], cited with approval in *Barnes, supra,* 42 Cal.3d at p. 304 ["[t]he kind of physical force that may induce fear in the mind of a woman is immaterial . . . it may consist in the taking of indecent liberties or of embracing and kissing her against her will"].)

---

[5]"Consent" currently is, and was at the time of the crime, defined for purposes of rape prosecutions as "positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved." (§ 261.6.)

In addition, the prosecution must satisfy the objective component, which asks whether the victim's fear was reasonable under the circumstances, or, if unreasonable, whether the perpetrator knew of the victim's subjective fear and took advantage of it. (See *Barnes, supra,* 42 Cal.3d at p. 304, & fn. 20.) The particular means by which fear is imparted is not an element of rape. (Cf. *In re Michael L.* (1985) 39 Cal.3d 81, 88 [216 Cal.Rptr. 140, 702 P.2d 222] [robbery].)

■ Applying these principles, we conclude that the evidence that the sexual intercourse was accomplished against Mercy's will by means of fear of immediate and unlawful bodily injury was sufficient to support the verdict in this case. First, there was substantial evidence that Mercy genuinely feared immediate and unlawful bodily injury. Mercy testified that she froze because she was afraid, and the investigating police officer testified that she told him she did not move because she feared defendant would do something violent.

The Court of Appeal stated, however, "But most importantly, the victim was unable to articulate an experience of fear of immediate and unlawful bodily injury." This statement ignores the officer's testimony as to Mercy's state of mind. Moreover, even absent the officer's testimony, the prosecution was not required to elicit from Mercy testimony regarding what precisely she feared. "Fear" may be inferred from the circumstances despite even super- ficially contrary testimony of the victim. (See *People* v. *Renteria* (1964) 61 Cal.2d 497, 499 [39 Cal.Rptr. 213, 393 P.2d 413] [in robbery prosecution, People not bound by clerk's testimony that he was not in fear, since there was other evidence to support conclusion "that he acted in fear and would not have disgorged the contents of his employer's till except in fear of the harm which might come to him or his employer if he failed to comply with defendant's demands"]; *People* v. *Borra* (1932) 123 Cal.App. 482, 484-485 [11 P.2d 403] [not necessary that there be proof of actual fear, as fear may be presumed where there is just cause for it, and thus "In spite of the bravado of the merchant in declaring that he was not much afraid, we are inclined to believe he meant he was not afraid of receiving bodily harm so long as he complied with the demands of the robber"]; see also *People* v. *Brew* (1991) 2 Cal.App.4th 99, 104 [2 Cal.Rptr.2d 851] [cashier in retail store robbed when defendant, considerably larger than she, with alcohol on his breath, stood close to her, without barrier or counter between them, causing cashier to step back from cash register drawer in fear]; *People* v. *Franklin* (1962) 200 Cal.App.2d 797, 798 [19 Cal.Rptr. 645] [although no testimony by checker that she handed over money because she was afraid, evidence sufficient to show that taking was by means of force or fear].)

In addition, immediately after the attack, Mercy was so distraught her friend Pam could barely understand her. Mercy hid in the bushes outside the

house waiting for Pam to pick her up because she was terrified defendant would find her; she subsequently asked Pam if the word "rape" was written on her forehead, and had to be dissuaded from bathing prior to going to the hospital. (See *People* v. *Bledsoe* (1984) 36 Cal.3d 236, 251 [203 Cal.Rptr. 450, 681 P.2d 291].)

Second, there was substantial evidence that Mercy's fear of immediate and unlawful bodily injury was reasonable. The Court of Appeal's statements that defendant "did nothing to suggest that he intended to injure" Mercy, and that '[a]lthough the assailant was a stranger to the victim, she knew nothing about him which would suggest that he was violent" ignores the import of the undisputed facts. Defendant, who weighed twice as much as Mercy, accosted her while she slept in the home of a close friend, thus violating the victim's enhanced level of security and privacy. (Cf. *People* v. *Jackson* (1992) 6 Cal.App.4th 1185, 1190 [8 Cal.Rptr.2d 239] ["A person inside a private residence, whether it be their own or that of an acquaintance, feels a sense of privacy and security not felt when outside or in a semipublic structure. . . . providing the [attacker] with the advantages of shock and surprise which may incapacitate the victim(s)."].)

Defendant, who was naked, then removed Mercy's pants, fondled her buttocks, and inserted his penis into her vagina for approximately one minute, without warning, without her consent, and without a reasonable belief of consent. Any man or woman awakening to find himself or herself in this situation could reasonably react with fear of immediate and unlawful bodily injury. Sudden, unconsented-to groping, disrobing, and ensuing sexual intercourse while one appears to lie sleeping is an appalling and intolerable invasion of one's personal autonomy that, in and of itself, would reasonably cause one to react with fear. (See *People* v. *Bermudez* (1984) 157 Cal.App.3d 619, 624-625 [203 Cal.Rptr. 728] [evidence of fear sufficient where victim assaulted in her own home by a stranger]; cf. § 263 ["The essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape."].)

The Court of Appeal's suggestion that Mercy could have stopped the sexual assault by screaming and thus eliciting Sandra S.'s help, disregards both the Legislature's 1980 elimination of the resistance requirement and our express language in *Barnes* upholding that amendment. (*Barnes, supra,* 42 Cal.3d at p. 302.) It effectively guarantees an attacker freedom to intimidate his victim and exploit any resulting reasonable fear so long as she neither struggles nor cries out. (See *People* v. *Bermudez, supra,* 157 Cal.App.3d at p. 624 ["The law has outgrown the resistance concept; a person demanding sexual favors can no longer rely on a position of strength which draws no

physical or verbal protest."]; Estrich, Real Rape (1987) p. 69.) There is no requirement that the victim say, "I am afraid, please stop," when it is the defendant who has created the circumstances that have so paralyzed the victim in fear and thereby submission.[6] (See *People* v. *Bermudez, supra,* 157 Cal.App.3d at p. 622 [a criminal invasion of sexual privacy does not become a nonrape merely because the victim is too fearful or hesitant to say, "I guess you know I dont want you to do this."].) Moreover, it is sheer speculation that Mercy's assailant would have responded to screams by desisting the attack, and not by causing her further injury or death.

The jury could reasonably have concluded that under the totality of the circumstances, this scenario, instigated and choreographed by defendant, created a situation in which Mercy genuinely and reasonably responded with fear of immediate and unlawful bodily injury, and that such fear allowed him to accomplish sexual intercourse with Mercy against her will.[7]

## CONCLUSION

The judgment of the Court of Appeal is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

Lucas, C. J., Mosk, J., Kennard, J., Baxter, J., George, J., and Spencer, J.,* concurred.

---

[6]No defense of reasonable and good faith but mistaken belief in consent was raised by the defendant, and we therefore express no opinion on the appropriateness of such a theory under the circumstances of this case. (See *People* v. *Williams* (1992) 4 Cal.4th 354, 362, 364 [14 Cal.Rptr.2d 441, 841 P.2d 961].)

[7]In light of our disposition on the issue of the sufficiency of the evidence of fear of immediate and unlawful bodily injury, it is unnecessary for us to address the issue of whether the evidence of force was also sufficient to support the verdict.

*Presiding Justice, Court of Appeal, Second District, Division One, assigned by the Acting Chairperson of the Judicial Council.