[No. B264462. Second Dist., Div. Five. Mar. 17, 2017.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID WARREN CHESTRA, Defendant and Appellant.

**COUNSEL**

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

A jury convicted defendant, David Warren Chestra, of first degree murder in violation of Penal Code section 187, subdivision (a).[1] The jury further found defendant personally and intentionally discharged a firearm causing death. (§ 12022.53, subd. (d).) Defendant admitted four prior conviction allegations within the meaning of sections 667, subdivision (d) and 1170.12, subdivision (b) were true. Defendant was sentenced to 100 years to life in state prison. We modify the oral pronouncement of judgment to include a $300 parole revocation restitution fine. (§ 1202.45.) In the published portion of this opinion, we discuss why any error in failing to instruct on voluntary manslaughter was harmless. We affirm the judgment in all other respects.

## II. THE EVIDENCE

Defendant was a self-described former gang member. Defendant testified that as a gang dropout, he was at risk of being killed. Viewed in the light most favorable to the verdict (see *People v. Hubbard* (2016) 63 Cal.4th 378, 392 [203 Cal.Rptr.3d 114, 371 P.3d 578]; *People v. Iniguez* (1994) 7 Cal.4th 847, 854 [30 Cal.Rptr.2d 258, 872 P.2d 1183]), the evidence established the following. On July 5, 2012, defendant shot and killed a former friend and fellow gang member, Gary Burks. Defendant was accompanied by his girlfriend, Brandy Ricks. Defendant kicked in Mr. Burks's apartment door. Mr. Burks, armed with a pair of scissors, attempted to block the door. Defendant reached around the door and fired his weapon several times striking Mr. Burks in the head.

---

[1] Further statutory references are to the Penal Code except where otherwise noted.

The morning after the murder, defendant was arrested on a parole violation. Defendant subsequently entered a guilty plea to owning or possessing the firearm within the meaning of section 29900. Both the gun, a .44-caliber revolver, and the unique ammunition used to commit the murder were found in a car owned by Ms. Ricks, but used by both defendant and Ms. Ricks. The car key was in defendant's pocket. The gun was hidden in the engine compartment. Six rounds were missing from the box of ammunition. Defendant and Ms. Ricks had purchased the ammunition several days prior to the murder. This transaction was captured on surveillance videotape.

Defendant was subsequently questioned by detectives and confessed to the crime. He described in detail the location, the physical surroundings, and the manner in which he killed the victim. Defendant's description was consistent with the evidence at the murder scene. As to the reason for the killing, defendant described himself as a gang "dropout." Defendant explained, "[The victim] was talking shit, so I, myself, took his punk ass life." Defendant said, "I was gonna kill all my homies." At another point, defendant explained: "[The victim] didn't think I was coming, but I came. I got him. . . . This is my own gang shit. I'm a dropout from my hood. . . ." Defendant also said Mr. Burks may have raped Ms. Ricks. Defendant told detectives: "I found out [Ms. Ricks and Mr. Burks] were doing some shit together, that he raped her. She, she told me. I don't even think it was a rape. She was asleep. So I just took that on, on account of myself and shit."

After confessing, defendant also wrote a letter to his wife, a member of defendant's former gang who had opposed his decision to leave the gang. Defendant said: "Your punk ass got Big Crow murdered by me! [The word 'me' is underlined twice.] . . . [L]ucky I got caught cuz all them fools were next. . . . Flaco's punk ass got lucky, but both them niggas felt my wrath who put hands on P.NuT, [a gang member who had died] . . . I tried to change but the hood wouldn't stop. So I ended the nigga[']s life. That simple. Don't worry I already confessed . . . ."

While in custody prior to trial, defendant also told deputies: "I'm gonna fucking kill a fucking cop or a fucking nurse . . . . That's fucking for real. I'm a . . . I'll be calm for a month. Two months, I'll wait. Three months, I'll wait. Killed my homeboy. I waited six months. Fucking talking about? Shot that fool in the head with a four-four. Kicked down the door. Right in the middle of his brain. Shit came out the shit. Think I won't kill a motherfucking cop over this. Killed my homeboy." (As noted above, the murder weapon was a .44-caliber revolver.)

At trial, however, defendant denied shooting Mr. Burks. Defendant testified it was Ms. Ricks who shot and killed Mr. Burks. Defendant said he had gone

to Mr. Burks's apartment with Ms. Ricks to acquire cocaine. Mr. Burks was a member of defendant's former gang. When Mr. Burks saw defendant in the hallway, he said, "What's up," meaning, "Fuck you." Mr. Burks retreated into the apartment, returned with a pair of scissors in his hand, and tried to stab defendant. (Homicide investigators found Mr. Burks gripping the scissors in his hand.) A physical altercation between the two ensued. The fight ended when Ms. Ricks shot Mr. Burks. Defendant said he did not know Ms. Ricks was armed. Defendant testified he falsely confessed to the murder in order to protect Ms. Ricks. Defendant said he was telling the truth at trial because he was terminally ill.

## III.  DISCUSSION

### A.–C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### D.  Lesser Included Offense Voluntary Manslaughter Instructions

The trial court instructed the jury on first and second degree murder. The trial court instructed that if the prosecution failed to prove a willful, deliberate, premeditated murder beyond a reasonable doubt, then the jury must find defendant guilty of second degree murder. (CALCRIM No. 521.) The jury convicted defendant of first degree murder. The jury further found defendant personally discharged a firearm causing Mr. Burks's death.

On appeal, defendant asserts the trial court should have sua sponte instructed on voluntary manslaughter based on heat of passion and imperfect self-defense. Defendant argues: "Given the evidence that [Mr.] Burks, a member of [defendant's] former gang, insulted [defendant] and attacked him with scissors before the shooting, a reasonable juror could have found that [defendant] actually believed that he needed to use deadly force to defend himself. If this belief was not found to be objectively reasonable, then the killing would only be voluntary manslaughter. The killing would also have been voluntary manslaughter if [defendant] acted in a heat of passion arising from [Mr.] Burks's insult and attack. The trial court was consequently required to instruct sua sponte on the lesser included offense of voluntary manslaughter based on imperfect self defense and heat of passion . . . ." We conclude that under *People v. Sinclair* (1998) 64 Cal.App.4th 1012, 1016–1022 [75 Cal.Rptr.2d 626] there was no error.

---

*See footnote, *ante*, page 1116.

■ Heat of passion and imperfect self-defense voluntary manslaughter are lesser included offenses of murder. (*People v. Simon* (2016) 1 Cal.5th 98, 132 [204 Cal.Rptr.3d 380, 375 P.3d 1] [imperfect self-defense]; *People v. Cole* (2004) 33 Cal.4th 1158, 1215 [17 Cal.Rptr.3d 532, 95 P.3d 811] [heat of passion].) ■ A trial court's duty to instruct on general principles of law, discussed above, extends to lesser included offenses. (*People v. Breverman* (1998) 19 Cal.4th 142, 154–155 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) Our Supreme Court has explained: "A trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser.' (*People v. Birks* (1998) 19 Cal.4th 108, 118 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense. (*People v. Ochoa* (1998) 19 Cal.4th 353, 422 [79 Cal.Rptr.2d 408, 966 P.2d 442].)" (*People v. Shockley* (2013) 58 Cal.4th 400, 403 [165 Cal.Rptr.3d 497, 314 P.3d 798].) In *People v. Cruz* (2008) 44 Cal.4th 636, 664 [80 Cal.Rptr.3d 126, 187 P.3d 970], our Supreme Court emphasized, "[T]he 'substantial' evidence required to trigger the duty to instruct on such lesser offenses is not merely 'any evidence . . . no matter how weak' (*People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]), but rather ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed. (*Id.* at p. 684, quoting *People v. Carr* (1972) 8 Cal.3d 287, 294 [104 Cal.Rptr. 705, 502 P.2d 513]; see [*People v.*] *Barton* [(1995)] 12 Cal.4th [186,] 201, fn. 8 [47 Cal.Rptr.2d 569, 906 P.2d 531]; *People v. Breverman, supra*, 19 Cal.4th . . . at pp. 162–163.)" (Accord, *People v. Castaneda* (2011) 51 Cal.4th 1292, 1327–1328 [127 Cal.Rptr.3d 200, 254 P.3d 249].) Further, our Supreme Court has held, "The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given. (*People v. Mosher* (1969) 1 Cal.3d 379, 393 [82 Cal.Rptr. 379, 461 P.2d 659][, disapproved on another ground in *People v. Ray* (1975) 14 Cal.3d 20, 32 [120 Cal.Rptr. 377, 533 P.2d 1017]]; *People v. Graham* (1969) 71 Cal.2d 303, 319 [78 Cal.Rptr. 217, 455 P.2d 153] [same].)" (*People v. Breverman, supra*, 19 Cal.4th at pp. 154–155.) Moreover, the trial court must instruct on a lesser included offense supported by the evidence even when it is inconsistent with the defendant's chosen defense. (*People v. Breverman, supra*, 19 Cal.4th at pp. 157, 162–163; *People v. Sedeno* (1974) 10 Cal.3d 703, 717, fn. 7 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on another point in *People v. Breverman, supra*, 19 Cal.4th at p. 163, fn. 10.)

Both heat of passion and imperfect self-defense voluntary manslaughter focus on the defendant's subjective state of mind. (*People v. Sinclair, supra*, 64 Cal.App.4th at p. 1015.) For heat of passion voluntary manslaughter to apply,

the defendant must be under the actual influence of a strong passion that obscures reason at the time of the homicide. (*People v. Wickersham* (1982) 32 Cal.3d 307, 326–327 [185 Cal.Rptr. 436, 650 P.2d 311], disapproved on another point in *People v. Barton, supra* 12 Cal.4th 186, 201; *People v. Sinclair, supra,* 64 Cal.App.4th at pp. 1015–1016.) Imperfect self-defense requires that the defendant be in actual fear of imminent danger to life or great bodily injury at the time of the homicide. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082 [56 Cal.Rptr.2d 142, 921 P.2d 1]; *People v. Sinclair, supra,* 64 Cal.App.4th at p. 1016.)

Our review is de novo. (*People v. Nelson* (2016) 1 Cal.5th 513, 538 [205 Cal.Rptr.3d 746, 376 P.3d 1178]; *People v. Simon, supra,* 1 Cal.5th at p. 133.) Our Supreme Court held: " 'On appeal, we review independently the question whether the trial court improperly failed to instruct on a lesser included offense.' (*People v. Souza* (2012) 54 Cal.4th 90, 113 [141 Cal.Rptr.3d 419, 277 P.3d 118].)" (*People v. Nelson, supra,* 1 Cal.5th at p. 538.)

■ In *People v. Sinclair, supra,* 64 Cal.App.4th at page 1015, the defendant, charged with murder, testified before the jury that he was unarmed and never fired the fatal shot. The jury convicted him of second degree murder and found he used a firearm. (*Ibid.*) On appeal, the defendant argued the jury should have received heat of passion and imperfect self-defense voluntary manslaughter instructions. Defendant reasoned such instructions were mandatory based on his testimony. That testimony related to the argument with the victim and others. This court, citing *People v. Medina* (1978) 78 Cal.App.3d 1000, 1005–1006 [144 Cal.Rptr. 581], held the failure to so instruct sua sponte was not error: "When defendant denied he shot the decedent, none of the alleged evidence of heat of passion and imperfect self-defense was of the type 'that a reasonable jury could find persuasive.' [Citation.]" Simply stated, the duty to instruct on inconsistent defenses does not extend to cases such as this where the sworn testimony of the accused [that he was unarmed and did not shoot anybody] completely obviates any basis for finding a lesser included offense." (*People v. Sinclair, supra,* 64 Cal.App.4th at pp. 1021–1022.) We also observed: "We do not mean to suggest that every time the accused completely denies under oath any participation in the charged homicide, there is no duty to instruct on lesser and necessarily included offenses. We acknowledge bright lines are difficult to draw in this case. However, the accused may confess or make admissions which indicate the fatal shooting occurred, for example, in the heat of passion. If the confession in which the accused admits shooting the deceased is presented to the jury, then it may be pertinent to the case in terms of conflicting evidence as to what occurred. There are no doubt other scenarios in which a defendant's under-oath denial she or he committed a homicide may be colored by other testimony, which creates substantial evidence sufficient to support manslaughter instructions. However, . . . the present

matter in which defendant denied being armed and shooting the decedent is not such a case." (*Id.* at p. 1020.)

Here, prior to trial, defendant confessed to an intentional killing. Defendant told detectives he was the aggressor, and he did not claim or suggest he (or anyone else) killed Mr. Burks in self-defense. Rather, defendant made it clear he was angry at Mr. Burks and retaliated against him for that reason. At trial, before the jury, by contrast, defendant denied shooting Mr. Burks. Defendant denied even being armed when Mr. Burks was shot. If defendant was to be believed, he took no part in the homicide. Under defendant's testimony, it was Ms. Ricks who shot Mr. Burks.

Under no view of the evidence was defendant guilty of only voluntary manslaughter. Defendant's trial testimony would not permit a jury composed of reasonable persons to conclude he was guilty of voluntary manslaughter but not murder, nor would his confession to the detectives, which was plainly inconsistent with his trial testimony and provided no support for a lesser included offense verdict on the murder charge. Unlike the hypothetical scenario discussed in *Sinclair*, defendant's confession did not indicate the fatal shooting occurred in the heat of passion or imperfect self-defense. (*People v. Sinclair, supra,* 64 Cal.App.4th at p. 1020.) The evidence was such that defendant was either guilty of murder or not guilty of any offense. Under these circumstances, the failure to sua sponte instruct on voluntary manslaughter was not error. (*People v. Sinclair, supra,* 64 Cal.App.4th at pp. 1018–1020; see also *People v. Leach* (1985) 41 Cal.3d 92, 106 [221 Cal.Rptr. 826, 710 P.2d 893] [defendant who denied taking part in a robbery was not entitled to lesser included grand theft instruction]; *People v. Trimble* (1993) 16 Cal.App.4th 1255, 1260 [20 Cal.Rptr.2d 495] [defendant who denied committing vehicular burglary was not entitled to lesser included auto tampering instruction]; *People v. Medina, supra,* 78 Cal.App.3d at pp. 1005–1006 [defendant who relied on alibi defense to murder was not entitled to diminished capacity instructions]; *People v. Salas* (1978) 77 Cal.App.3d 600, 607–608 [143 Cal.Rptr. 755] [defendant relying on alibi defense to robbery was not entitled to a simple assault instruction]; *People v. Whalen* (1973) 33 Cal.App.3d 710, 718 [109 Cal.Rptr. 282] [no error in failing to instruct on assault with a deadly weapon where defendant, charged with assault with a deadly weapon on a police officer, denied pointing a gun at the officer].) Given the foregoing analysis, we need not discuss whether the failure to sua sponte instruct on voluntary manslaughter, even if error, was harmless.

E.–I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The oral pronouncement of judgment is modified to impose a $300 parole revocation restitution fine under Penal Code section 1202.45. The judgment is affirmed in all other respects. Upon remittitur issuance, the clerk of the superior court is to prepare an amended abstract of judgment reflecting a $30 assessment under Government Code section 70373, subdivision (a)(1) instead of a $300 such assessment, and deliver a copy to the Department of Corrections and Rehabilitation.

Baker, J., and Kumar, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied May 24, 2017, S241340.

---

*See footnote, *ante*, page 1116.

†Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.