Filed 11/17/25  P. v. Elahi CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083239 |
| v. | (Super.Ct.No. FMB22000480) |
| PEJMAN ELAHI, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Melissa A. Rodriguez, Judge. Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Arlyn Escalante, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Pejman Elahi appeals from his convictions for the attempted murder of and assault with a firearm on Gerald Jonas. Jonas challenged defendant to a fistfight outside the trailer of his ex-girlfriend, who was dating defendant at the time. Rather than fight, defendant pulled out a gun and started to shoot as Jonas tried to run away. On appeal, defendant argues the trial court had a sua sponte duty to instruct the jury on self-defense to the charges of attempted murder and assault with a firearm, and to instruct on the lesser included offense of attempted voluntary manslaughter to the charge of attempted murder. In addition, defendant contends the trial court erred when it sentenced him on the charge of attempted murder. We find no error and affirm the judgment.

I.

FACTS AND PROCEDURAL BACKGROUND[1]

Responding to an emergency call in Twentynine Palms, police found Jonas bleeding from gunshot wounds to his upper thigh, right arm above the elbow, and left leg below the knee. Jonas told the officers he had been shot by "Brianna's new boyfriend, Chuck[y]." Brianna's trailer was next to the property where the officers had found Jonas. Officers found Jonas's four-wheel "quad" motorcycle outside Brianna's trailer. They also found blood stains on the carpet leading into the trailer and a jacket inside the trailer that had a bloody hole in a sleeve that corresponded to the bullet wound on Jonas's arm.

---

[1] Because defendant's claims of error relate solely to his convictions and sentence on counts 1 and 2 for the attempted murder of and assault with a deadly weapon on Jonas, we need not recount the facts related to defendant's additional convictions.

A detective interviewed Jonas at the hospital. Jonas told the detective he had gone to his ex-girlfriend Brianna's trailer because he had learned Brianna was telling people he had died. When he arrived, Jonas saw Chucky there. Jonas recognized Chucky from Facebook, had seen him once before at a liquor store, and he knew Chucky was dating Brianna. Jonas said, "[L]et's go fight if you wanna fight." He then drove his quad into a field next to Brianna's trailer, and, as soon as he dismounted the quad, defendant pulled out a gun and started shooting at Jonas. Jonas started running away and was shot in the back of the legs and above the elbow. He told the detective defendant fired a "full clip" at him. Jonas said he played dead until defendant left, then crawled to Brianna's trailer and asked her to call the police. When she refused, Jonas crawled to a neighbor's house and asked for help. Jonas identified defendant from a photographic lineup based on a tattoo above his right eye.

When called to testify, Jonas recanted his story and testified he could not remember many details of the shooting, including the identity of the shooter. Jonas said he did not remember the day he was shot at all, and he did not recall speaking to a detective at the hospital. However, he testified he was not armed when he rode to Brianna's house and the person riding a white quad who shot him was wearing a white helmet.

Relevant here, a jury found defendant guilty on count 1 of attempted murder. (Pen. Code,[2] §§ 664, 187.) The jury found true the following allegations connected to

_____

[2] All further statutory references are to the Penal Code unless other indicated.

3

count 1: (1) he personally used a firearm during the commission of the offense (§ 12022.53, subd. (b)); (2) he personally and intentionally discharged a firearm during the commission of the offense (§ 12022.53, subd. (c)); (3) he personally and intentionally discharged a firearm during the commission of the offense that proximately caused great bodily injury or death to Jonas (§ 12022.53, subd. (d)); and (4) he acted willfully and with premeditation and deliberation. On count 2, the jury found defendant guilty of assaulting Jonas with a firearm. (§ 245, subd. (a)(2).) In a separate proceeding, the trial court found true the allegation that defendant had been previously convicted of a violent felony for purposes of the three strikes law.[3]

The trial court sentenced appellant to a total determinate term of 11 years four months plus an indeterminate term of 39 years to life. Specifically, for count 1, the trial court sentenced defendant to "7 years to life," doubled under the three strikes law, for "14 years to life."

Defendant timely appealed.

## II.

## DISCUSSION

A. *The Trial Court Had No Sua Sponte Duty To Give a Self-defense Instruction.*

Defendant argues that, with respect to counts 1 and 2, the trial court erred prejudicially by not instructing the jury on self-defense. According to defendant, the

---

[3] The jury also found defendant guilty of the attempted murder and assault on a separate victim, found him guilty of unlawful possession of weapons and ammunition, but found him not guilty of possessing a billy or blackjack.

4

evidence showed he shot at Jonas in imminent fear of being attacked so the court had a sua sponte duty to give a self-defense instruction notwithstanding his failure to request one. We find no error.

"""It is settled that in criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence"' and '"necessary for the jury's understanding of the case."' [Citations.] It is also well settled that this duty to instruct extends to defenses 'if it appears . . . the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'" (*People v. Brooks* (2017) 3 Cal.5th 1, 73 (*Brooks*).)

"Substantial evidence supporting sua sponte instruction on a particular defense is evidence that is 'sufficient to "deserve consideration by the jury, i.e., 'evidence from which a jury composed of reasonable [persons] could have concluded'"' that the particular facts underlying the instruction did exist." (*Brooks*, *supra*, 3 Cal.5th at p. 75.) "In determining whether substantial evidence supports a defense, the trial court must leave issues of witness credibility to the jury." (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49.) "On review, we determine independently whether substantial evidence supported the instruction." (*People v. Ibarra* (2024) 106 Cal.App.5th 1070, 1077 (*Ibarra*).)

First, as the People contend, an instruction that defendant shot at Jonas in self-defense would have been inconsistent with his defense "that he was misidentified as the

gunman." Defendant did not testify, but during closing argument his attorney told the jury the "big question" or "big issue" was the identity of Jonas's shooter. According to counsel, no witness testified to the physical attributes of Jonas's shooter (height, weight, build) or that defendant matched the physical description of the assailant. In sum, counsel stated, "I don't believe the People can eliminate all doubts that they might have the wrong person." Therefore, we agree with the People that a jury instruction on self-defense would have been inconsistent with the articulated defense theory that the People had not proven beyond a reasonable doubt defendant had anything to do with the shooting. (See *People v. Guthrie* (1983) 144 Cal.App.3d 832, 843 [trial court had no sua sponte duty to instruct on defense of mistake of fact to charge of first degree burglary because it was "manifestly inconsistent" with defense theory of mistaken identity].)

Second, there is no substantial evidence in the record to support an instruction on self-defense. "'Self-defense, when based on a *reasonable* belief that killing [or attempted killing] is necessary to avert an imminent threat of death or great bodily injury, is a complete justification, and such a killing [or attempted killing] is not a crime.'" (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 648.) "To be exculpated on a theory of self-defense one must have an honest and reasonable belief in the need to defend. (Pen. Code, § 197; [citations].) A bare fear is not enough; 'the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.' (Pen. Code, § 198.)" (*People v. Flannel* (1979) 25 Cal.3d 668, 674-675, superseded by statute on another ground as stated in *In re Christian S.*

6

(1994) 7 Cal.4th 768, 777.) "The threat of bodily injury must be imminent [citation], and '. . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances.'" (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065 (*Minifie*).)

A defendant's belief in the need to act in self-defense must be *objectively* reasonable. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082-1083.) Whether a defendant reasonably acted in self-defense "is determined from the point of view of a reasonable person in the defendant's position. The jury must consider all the facts and circumstances it might '"expect[] to operate on [defendant's] mind . . . ."'" (*Minifie*, *supra*, 13 Cal.4th at p. 1065.) Evidence that the victim of the assault threatened the defendant is admissible to establish that the defendant acted in self-defense. (*Ibid.*) "'A person claiming self-defense is . . . "entitled to corroborate his testimony that he was in fear for his life by proving the reasonableness of such fear."'" (*Ibid.*)

Jonas told the police that, when he saw defendant at Brianna's trailer, Jonas said, "[L]et's go fight if you wanna fight." Jonas rode his quad into a field next to Brianna's trailer, and, *as soon as he dismounted*, defendant pulled out a firearm and started shooting at him. During his interview with the police and at trial, Jonas denied that he was armed at the time. And the record contains no evidence that Jonas pointed a weapon at defendant or that he threatened defendant with physical injury *before* defendant began to fire his weapon. In short, there was no evidence defendant had an objectively reasonable belief in the need to use deadly force to prevent *imminent* death or great bodily injury.

Last, even if the record contained some evidence that defendant reasonably feared Jonas would inflict imminent bodily injury, defendant used more force than necessary. An assailed person has no duty to retreat and may stand their ground until the danger of death or great bodily injury has passed. (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1044, fn. 13; see CALCRIM No. 3470.) But when the assailed person has so successfully repelled the attack that the assailant has retreated or has been rendered incapable of inflicting injury, no further justification exists for using deadly force in retaliation. (*People v. Gleghorn* (1987) 193 Cal.App.3d 196, 202; *People v. Smith* (1981) 122 Cal.App.3d 581, 590; see CALCRIM No. 3474.) Not only did defendant immediately start shooting once Jonas dismounted his quad, but he continued to fire even *as Jonas tried to run away*, striking Jonas in the back of the legs and above his elbow.

In sum, we conclude the trial court had no sua sponte duty to instruct the jury on self-defense.

B. *The Trial Court Had No Sua Sponte Duty To Instruct On The Lesser Included Offense of Attempted Voluntary Manslaughter.*

Next, defendant argues that, with respect to count 1, the trial court had a sua sponte duty to instruct the jury on the lesser included offense of attempted voluntary manslaughter, and failure to do so was prejudicial error. He contends the record contains evidence that he shot at Jonas under heat of passion and/or under the honest but objectively unreasonable belief that he was in peril of death or bodily injury. Again, we find no error.

8

"A trial court has a sua sponte duty to instruct the jury on a lesser included uncharged offense if there is substantial evidence that would absolve the defendant from guilt of the greater, but not the lesser, offense." (*People v. Simon* (2016) 1 Cal.5th 98, 132.) "Substantial evidence in this context is that which a reasonable jury could find persuasive. [Citation.] In deciding whether there exists sufficient evidence to support a requested instruction, trial courts should resolve all doubts in favor of the accused. [Citation.] However, speculation is not evidence and will not warrant the giving of an instruction on a lesser included offense." (*People v. Choyce* (2025) 18 Cal.5th 86, 104 (*Choyce*).)

""""Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) A defendant who commits an intentional and unlawful killing but who lacks malice is guilty of . . . voluntary manslaughter. (§ 192.)" [Citation.] Generally, the intent to unlawfully kill constitutes malice. (§ 188; [citations].) "But a defendant who intentionally and unlawfully kills lacks malice . . . in limited, explicitly defined circumstances: either when the defendant acts in a 'sudden quarrel or heat of passion' (§ 192, subd. (a)), or when the defendant kills in 'unreasonable self-defense'—the unreasonable but good faith belief in having to act in self-defense [citations]." [Citation.] Because heat of passion and unreasonable self-defense reduce an intentional, unlawful killing from murder to voluntary manslaughter by negating the element of malice that otherwise inheres in such a homicide [citation], voluntary manslaughter of these two forms is considered a lesser necessarily included offense of intentional murder

9

[citation].'" (*People v. Moye* (2009) 47 Cal.4th 537, 549, italics omitted.) "Attempted voluntary manslaughter is a lesser included offense of attempted murder." (*Ibarra*, *supra*, 106 Cal.App.5th at p. 1081.)

As they did in the context of a self-defense instruction, *ante*, the People argue the trial court had no duty to instruct on the lesser included offense of attempted voluntary manslaughter because the "defense was limited to a misidentification theory." "A trial court need not . . . instruct on lesser included offenses when the evidence shows that the defendant is either guilty of the crime charged or not guilty of any crime (for example, when the only issue at trial is the defendant's identity as the perpetrator). Because in such a case 'there is no evidence that the offense was less than that charged' [citation], the jury need not be instructed on any lesser included offense." (*People v. Barton* (1995) 12 Cal.4th 186, 196, fn. 5.)

"Generally, the court need not instruct on a lesser included offense when . . . the defendant [who testified] completely denies the charged offense, and no evidence reasonably supports the inference that the defendant committed only the lesser included offense." (*People v. Campbell* (2020) 51 Cal.App.5th 463, 503; see *People v. Gutierrez* (2009) 45 Cal.4th 789, 826 [no duty to instruct on voluntary manslaughter where, inter alia, "defendant's identity as the killer was contested, because he denied killing the victim, specifically maintaining that his unnamed companions committed the murder"]; *People v. Sinclair* (1998) 64 Cal.App.4th 1012, 1016-1022 [no duty to instruct on

10

voluntary manslaughter because defendant testified he was not armed and did not shoot the victim].)

But the same is not true where, as here, the defendant *did not testify* he did not shoot the victim, and he merely *argued* to the jury that the identity of the assailant was the central issue. Unlike defenses, a trial court has a sua sponte duty to instruct on lesser included offenses supported by substantial evidence even when the defendant objects to the instruction and it is inconsistent with the articulated theory of the defense. (*People v. Nieves* (2021) 11 Cal.5th 404, 463; *People v. Chestra* (2017) 9 Cal.App.5th 1116, 1121; *People v. Gutierrez* (2003) 112 Cal.App.4th 704, 709, fn. 1.)

In any event, we agree with the People that the record contains insufficient evidence to support an instruction on attempted voluntary manslaughter based on heat of passion. "'The heat of passion requirement for manslaughter has both an objective and a subjective component.' [Citation.] 'The defendant must actually, subjectively, kill under the heat of passion.' [Citation.] With respect to the objective component, '"this heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances."' [Citation.] To satisfy this objective standard, '"the accused's heat of passion must be due to 'sufficient provocation,'"' which must come from the victim. [Citation.] The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim or by conduct reasonably believed by the defendant to have been engaged in by

11

the victim. [Citation.] 'Adequate provocation and heat of passion must be affirmatively demonstrated.'" (*Choyce*, *supra*, 18 Cal.5th at pp. 104-105.)

As noted, the record shows Jonas rode his quad to Brianna's trailer, apparently looking for a fight. When he arrived, he saw defendant, who he knew to be "Chucky" and Brianna's new boyfriend. Jonas said, "[L]et's go fight if you wanna fight." Jonas then rode his quad into a field next to the trailer, and, as he dismounted, defendant pulled out a gun and started to shoot. There is no evidence whatsoever that Jonas was armed, that he threatened defendant with a weapon, or that he was significantly larger in build and stature such that defendant would have been at an unfair disadvantage in a fistfight. And there is no evidence from which a jury could conclude that being challenged to a fistfight by an ex-boyfriend would naturally arouse heat of passion in an ordinary, reasonable person sufficient to cause that reasonable person to use deadly force before the fistfight had even commenced.

With respect to attempted voluntary manslaughter based on imperfect self-defense, the People argue defendant "would have had to testify that he actually believed he was in imminent danger as a result of [Jonas's] conduct." Not so. "'Imperfect self-defense, which reduces murder to voluntary manslaughter, arises when a defendant acts in the actual but unreasonable belief that he is in imminent danger of death or great bodily injury.' [Citation.] 'To satisfy the imminence requirement, "[f]ear of future harm—no matter how great the fear and no matter how great the likelihood of the harm—will not suffice. The defendant's fear must be of *imminent* danger to life or great bodily

12

injury.'"'" (*People v. Steskal* (2021) 11 Cal.5th 332, 345.) "'"'[T]he peril must appear to the defendant as immediate and present and not prospective or even in the near future. *An imminent peril is one that, from appearances, must be instantly dealt with*.'"'" (*People v. Thomas* (2023) 14 Cal.5th 327, 386.)

Evidence of a defendant's state of mind (intent, knowledge, belief, etc.) is usually proven with circumstantial evidence. (See *People v. Nguyen* (2015) 61 Cal.4th 1015, 1055; *People v. Lewis* (2001) 26 Cal.4th 334, 379.) To support giving an instruction on imperfect self-defense, "there must be evidence from which the jury could find that appellant actually had such a belief [of imminent peril]. This evidence may be present *even though appellant did not testify or make a statement admitted at trial*." (*People v. Viramontes* (2001) 93 Cal.App.4th 1256, 1262, italics added.)

However, once more, we agree with the People the record does not support an instruction based on imperfect self-defense. To repeat, defendant immediately pulled out a gun and started to shoot as soon as Jonas dismounted his quad and before the fistfight had even started. The record simply does not support an inference that defendant honestly believed he was in imminent peril of death or great bodily injury, and that he had to immediately address that threat by shooting at Jonas.

In sum, we conclude the trial court had no sua sponte duty to instruct on the lesser included offense of attempted voluntary manslaughter.

13

C. *No Sentencing Error.*

Last, defendant argues the trial court erred when it sentenced him to "14 years to life" on count 1. Citing *People v. Wong* (2018) 27 Cal.App.5th 972 (*Wong*), defendant contends it was error to express his sentence in this way because of its reference to a minimum term of imprisonment instead of a minimum parole eligibility period. Defendant did not timely interpose an objection. Assuming the claim of error has not been forfeited, we find no error.

In *Wong*, *supra*, 27 Cal.App.5th 972, the appellate court noted the trial court's description of a sentence of "'15 years to life'" and a base term of "'7 years to life'" for premeditated attempted murder was a "common shorthand to refer to a life sentence with minimum parole eligibility. However, the shorthand pronouncement is incorrect because it indicates a minimum term exists, rather than a minimum parole eligibility." (*Id*. at p. 977, fn. 4.) "[T]here is a minimum parole eligibility of seven years, but that is not part of the sentence that is pronounced. Thus, a more accurate statement of the sentence for attempted murder is simply 'life, plus' any determinate enhancements." (*Ibid*.)

From a practical perspective, we are hard pressed to find fault with the trial court's expression of defendant's life sentence because it merely calls attention to the amount of time he must spend in custody as a prerequisite to parole eligibility. While it might be more precise to describe the minimum term of confinement as the minimum parole eligibility period, it was not clearly error for the trial court to characterize it as a minimum term of imprisonment. As the Supreme Court observed in *People v. Jefferson*

(1999) 21 Cal.4th 86, "A statute requiring a prisoner to serve a specified term of incarceration before being released on parole is a provision requiring service of a 'minimum term'" for purposes of the three strikes law. (*Id*. at p. 96.) The court recognized that including the minimum term of imprisonment in an indeterminate life sentence "gives guidance to the Board of Prison Terms regarding the appropriate minimum term to apply, and it informs victims attending the sentencing hearing of the minimum period the defendant will have to serve before becoming eligible for parole." (*Id*. at p. 101, fn. 3.)

Therefore, we find no error in the sentence as it was imposed.

## III.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

RAPHAEL
J.

15